# EXHIBIT C

| | |
|---|---|
| ERIN E. KIS, on behalf of herself and all others similarly situated, <br><br>          Plaintiff, <br><br>    v. <br><br> COVELLI ENTERPRISES, INC., <br><br>          Defendant. | Case No. 4:18-cv-00054-JG |
| CHELSEA ROMANO, individually and on behalf of all others similarly situated, <br><br>          Plaintiff, <br><br>    v. <br><br> COVELLI ENTERPRISES, INC., <br><br>          Defendant. | Case No. 4:18-cv-00434-JG |

## DECLARATION OF ERIN E. KIS

I, Erin E. Kis, declare, based upon personal knowledge and under penalty of perjury, pursuant to 28 U.S.C. Section 1746, that the following is true and correct:

**Employment History**

1.       I worked for Covelli Enterprises, Inc. ("Covelli") as an Assistant Manager ("AM") from approximately December 22, 2016 to approximately October 1, 2017.

2.       From approximately February 9, 2017 to approximately October 1, 2017, I worked as an AM at a Covelli-owned Panera Bread restaurant located in Wadsworth, Ohio.

3.     Prior to starting work as an AM at the Wadsworth Panera Bread restaurant, I underwent an approximately 12-week training program at a Covelli-owned Panera Bread restaurant in Brunswick, Ohio.

4.     During the training program, I completed rotations to learn the job functions at each of the different stations at the restaurant, including dining room, prep, dish, bakery, and cashier.

5.     Only a small portion of my training involved learning how to create schedules or to complete paperwork.  I spent the vast majority of my time during training performing the same job functions listed in paragraph 8.

**Unpaid Overtime**

6.     As an AM, Covelli did not pay me overtime compensation.

7.     As an AM, I regularly worked five days per week and averaged approximately 50 hours of work each week, but I was never paid overtime compensation for the hours in a week that I worked over 40.  To the best of my knowledge, other AMs with whom I worked were also not paid overtime compensation.

**Job Duties**

8.     I spent approximately 95% of my time as an AM performing manual and customer service tasks, including greeting customers, making sandwiches, running the cash register, operating the dishwasher, baking bread, plating food, unloading delivery trucks, stocking supplies, and cleaning.

9.     Covelli locations like the ones at which I worked are primarily run by a General Manager ("GM"), and employ one or more AMs and numerous hourly employees.  Covelli strictly controlled labor costs at the restaurant where I worked.  I had no authority regarding or

input into the labor budget at my restaurant, and I could not hire or fire employees. Labor budgets were developed by Covelli based on revenue generated by the restaurant. To meet Covelli's labor budgets, my GM, Jamie Shellhorn, and director of the region, Paul Fjeldstat, regularly sent hourly-paid workers home or instructed me to send hourly-paid workers home. After the hourly-paid workers were sent home, I was required to complete their job duties.

10. Covelli communicated in writing specific directives and policies applicable to the restaurant. I and other AMs were required to follow these directives and policies and we were not allowed to deviate from them. Covelli issued policies applicable to many aspects of the restaurant's operations. Specifically, I recall receiving directives that hourly-paid workers who were not dressed in accordance with Covelli policies were to be sent home, and that I was not to schedule interviews with prospective hourly-paid workers until explicitly directed by the GM. I was required to follow these directives.

11. Covelli also selected and communicated the menu items available and their respective prices at the restaurant where I worked. As an AM, I had no input into the selection of menu items or prices at the restaurant where I worked. I do not know how Covelli selected the menu items or set their prices.

12. Covelli also determined and communicated the layout of the restaurant where I worked. As an AM, I received a packet of materials from Covelli dictating the specifics of the layout of the restaurant at which I worked. These materials included details like the placement of seasonal decorations as dictated by a schematic, and marketing materials to be used when seasonal or other changes were made to the menu.

13. I never provided, and Covelli never asked me to provide, input regarding promotions, sales strategies, or advertising for the restaurant. The director of the region

communicated my restaurant's marketing and promotion strategies, which I believe he received from Covelli.

14.     I had no authority to set the hours of operation at the restaurant where I worked. Even in the event of a snowstorm or other bad weather, I was unable to close the restaurant. I learned from the directors of the region that the corporate office handled these decisions for all restaurants across the company.

15.     Covelli mandated the dress code for the employees at the restaurant where I worked through a corporate employee handbook.

16.     GMs managed the Covelli-owned Panera Bread restaurant where I worked during the period that I worked there. The GM had ultimate authority over employee hiring, firing, discipline and scheduling, and finalizing employees' performance reviews.

17.     Although I performed some "managerial" duties from time to time, such as participating in the first round of interviews and creating a first draft of the schedule, these responsibilities took up only a small part of my work time (5% or less) and I performed these duties as a conduit for the GM. However, I could not unilaterally hire, fire, discipline, make employee schedules or finalize employee performance reviews.

**Similar Employment Practices**

18.     I observed other AMs, including Julie Steed, performing the same mix of job duties that I performed. I observed her because she worked as an AM in the same restaurant where I worked.

19.     The Brunswick, Ohio restaurant, where I completed my training, operated in the same way as the Wadsworth, Ohio restaurant where I worked. In both the restaurant where I trained to be an AM and the restaurant where I worked as an AM, my job duties were similar.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: _Medina_, Ohio
March 21, 2018

Erin E. Kis
Erin E. Kis