UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
-------------------------------------------------------

|  |  |
|---|---|
| ERIN E. KIS, *on behalf of herself and all others similarly situated*, | Case Nos. 4:18-cv-54 |
| Plaintiffs, |  |
| vs. | OPINION & ORDER [Resolving Docs. 125, 126, 129] |
| COVELLI ENTERPRISES, INC., |  |
| Defendant. |  |

-------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

Plaintiffs are current and former Panera Bread Café assistant managers, who worked for Defendant Covelli Enterprises, Inc.[1] Plaintiffs sue under the Fair Labor Standards Act ("FLSA") and Ohio law for unpaid overtime. Defendant argues that Plaintiffs were executives and thus exempt from the FLSA's overtime requirements.

In May 2018, the Court conditionally certified the case as an FLSA collective action.[2] Defendant now moves to decertify this collective action. In support of its motion, Defendant argues that Plaintiffs are too dissimilar to continue collectively.[3] The Court held a December 12, 2018 hearing on this motion.[4] Relatedly, Plaintiffs move to strike certain exhibits supporting Defendant's motion.[5]

For the following reasons, the Court **DENIES** Defendant's motion to decertify and Plaintiffs' motions to strike.

---

[1] Doc. 41 at 4.
[2] Doc. 41.
[3] Doc. 125. Plaintiffs oppose. Doc. 130. Defendant replies. Doc. 133.
[4] Doc. 142.
[5] Docs. 126, 129. Defendant opposes. Docs. 132, 138. Plaintiffs reply. Docs. 135, 140.

Case Nos. 4:18-cv-54
Gwin, J.

# I. Plaintiffs Are Similarly Situated

The FLSA exempts "bona fide executive[s]" from its overtime requirements.[6] An employee is an executive if: (i) his primary duty is management, (ii) he customarily and regularly direct the work of at least two other employees, and (iii) he either hires or fires employees or his employment suggestions are given particular weight.[7] This case presents a narrow question: did Plaintiffs' job duties qualify them for the FLSA's executive exemption?

To go ahead collectively, Plaintiffs must demonstrate that they are similarly situated.[8] In considering whether Plaintiffs are similarly situated, the Court considers: (i) Plaintiffs' factual and employment settings, (ii) different defenses Plaintiffs may be subject to on an individual basis, and (iii) the degree of fairness and procedural impact of certification.[9]

## A. Factual & Employment Settings

The Court considers whether Plaintiffs' job duties were sufficiently similar.[10] Here, the evidence shows they were.

First, thirty Plaintiffs testified that a large majority (usually more than 90%) of their duties were centered on customer service and manual labor.[11] Many Plaintiffs testified that their job duties were the same even when they worked in different stores,[12] and that they

---

[6] 29 U.S.C. § 213(a)(1).
[7] 29 C.F.R. § 541.100(a). They also must earn a minimum salary of $455 per week; the parties appear to agree Plaintiffs earned this.
[8] 29 U.S.C. § 216(b) (emphasis added); *White v. Baptist Mem'l Health Care Corp.*, 699 F.3d 869, 877 (6th Cir. 2012).
[9] *E.g.*, *Monroe v. FTS USA, LLC*, 860 F.3d 389, 397, 402 (6th Cir. 2017).
[10] *See id.* at 401.
[11] Doc. 29-4 at 3; Doc. 29-5 at 3–4; Doc. 29-6 at 3; Doc. 29-7 at 3–4; Doc. 29-8 at 4; Doc. 130-7 at 12, 15, 22, 26, 35, 52, 69; Doc. 130-8 at 3, 7–8, 19, 25, 40, 48, 52, 60, 64; Doc. 130-9 at 3–4, 7, 32, 43, 49, 52, 59, 65, 76.
[12] Doc. 29-4 at 5; Doc. 29-5 at 3; Doc. 29-6 at 5–6; Doc. 29-7 at 6; Doc. 29-8 at 6; Doc. 130-7 at 31, 35, 72–73; Doc. 130-8 at 11, 29, 42, 52; Doc. 130-9 at 45, 61, 81–82.

Case Nos. 4:18-cv-54
Gwin, J.

saw other assistant managers doing the same work.[13]

Second, every assistant manager must complete the same detailed nine-week manager-in-training program.[14] Further, Plaintiffs testified that they did not undergo new training when they switched stores.[15] This suggests that assistant manager duties were similar across different stores.

Third, Defendant exercises a significant degree of corporate micromanagement, which would produce more uniform position responsibilities. For example, former Panera general manager Tyler Wilkey testified that "Covelli maintained strict policies and mandates about job functions."[16] So much so that, even though he "wanted to give more responsibility to [his assistant managers,] . . . [he] learned that this was just not possible."[17] And some assistant managers describe a striking level of central control over even the smallest of tasks, like arranging pastries.[18]

Fourth, the Court notes that Defendant has not argued that it classified any of its assistant managers as non-exempt or conducted an individualized analysis whether it should exempt any assistant manager. If Defendant classifies all assistant managers as exempt executives, this would further suggest similarity across the position.

Defendant argues that assistant managers' job responsibilities are set entirely by each general manager and vary significantly between stores. However, Defendant's own

---

[13] Doc. 29-4 at 5; Doc. 29-5 at 3; Doc. 29-6 at 5–6; Doc. 29-7 at 5–6; Doc. 29-8 at 6; Doc. 130-7 at 18, 31, 37, 53, 72; Doc. 130-8 at 10, 29, 42, 54; Doc. 130-8 at 10, 29, 42, 54; Doc. 130-9 at 9, 34–35, 45, 55, 61, 81.
[14] Doc. 125 at 11.
[15] Doc. 29-5 at 3; Doc. 29-6; Doc. 29-7 at 6; Doc. 29-8 at 6; Doc. 130-7 at 18, 32, 35–36, 53, 72–73; Doc. 130-8 at 11, 29, 42; Doc. 130-9 at 18, 45, 56, 62, 82.
[16] Doc. 130-9 at 66.
[17] *Id.*
[18] *E.g.,* Doc. 130-7 at 26–28; Doc. 130-8 at 52.

Case Nos. 4:18-cv-54
Gwin, J.

evidence and arguments show the opposite.[19]  For example, Defendant sent questionnaires to ten current non-Plaintiff assistant managers that asked them to identify—from a list of eleven activities—what their "job duties generally included[ed]."  Their responses reflect similarity, not disparity:

- Scheduling employees: **7/10**
- Hiring and selecting employees: **7/9**
- Supervising employees: **10/10**
- Managing food costs: **7/10**
- Handling customer issues: **10/10**
- Dealing with administrative documents: **10/10**
- Training employees: **10/10**
- Evaluating employees' work: **10/10**
- Completing performance evaluations: **8/10**
- Issuing disciplinary actions: **9/10**
- Assigning daily work activities: **10/10**.[20]

At the decertification hearing, defense counsel acknowledged these similarities, saying that Defendant faced a "Hobson's choice"—if Defendant shows too much dissimilarity it will hurt its merits position.[21]  But by preserving its merits footing, Defendant loses decertification ground.

Defendant also argues that some assistant managers who have not opted-in have testified that their work was predominantly managerial, and Plaintiffs testified their work

---

[19] "The[] declarations demonstrate that the AMs . . . have or had management as their primary duty."  Doc. 125 at 18.  "AMs from Café's with Opt-In Plaintiffs are involved in training associates."  *Id.* at 21.  "All 10 of the AM declarants stated that they are responsible for directing the work of employees."  *Id.* at 22.  "All of the AMs stated that they give direction and/or assign tasks to employees."  *Id.*  "Almost all of the AM declarants testified that they were responsible for evaluating associates and most stated that they completed associate performance evaluations."  *Id.* at 23.  "Eight of the 10 AMs reported involvement in various levels of employee discipline."  *Id.* at 24.

[20] Doc. 125-1 at 3, 9, 15, 20, 26, 32, 37, 42, 48, 53.

[21] Doc. 145 at 13–14.  The Court also notes that Defendant was not required to move for decertification.

-4-

Case Nos. 4:18-cv-54
Gwin, J.

was mostly non-managerial.  This, Defendant argues, shows disparity in the assistant manager position.  Not really.  Differences between Plaintiff and non-Plaintiff assistant managers do little to show differences between Plaintiffs.

Plaintiffs' duties appear similar—this factor favors Plaintiffs going ahead collectively.

### B.  Defenses

The Court next considers the different defenses Defendant may raise against Plaintiffs on an individual basis.  Here, Defendant raises a single defense—Plaintiffs are exempt from the FLSA's overtime requirement as executives.  The Defendant may win this defense.  But the Defendant may lose this defense.  This factor too favors Plaintiffs continuing collectively.

### C.  Fairness & Procedural Impact

In determining fairness, the Court considers whether allowing Plaintiffs to continue collectively fits the FLSA's purposes.  Defendant itself admits that "decertification would require the Plaintiffs to pursue cases which may be too small to file."[22]  Thus, going ahead collectively would serve the FLSA's policy of consolidating small, related claims, that would be too costly to pursue individually.[23]

Defendant claims that trying the case collectively will "trample" on its due process rights because it cannot cross examine each Plaintiff at trial.  This grievance, however, is intrinsic to all collective actions.  The Court is confident that, through representative evidence and other mechanisms, Defendant can present its case.[24]

---

[22] Doc. 134 at 4.
[23] Monroe, 860 F.3d at 405.
[24] Defendant argues that it would be unfair to try the case collectively because they properly classified Plaintiffs as exempt.  Doc. 125 at 32.  Yet again, Defendant's merits position infects its decertification argument.  This is irrelevant to collective fairness.

-5-

Case Nos. 4:18-cv-54
Gwin, J.

Plaintiffs worked for the same employer, in the same position, apparently doing the same work, classified under the same FLSA exemption. Requiring Plaintiffs to continue individually could create hundreds of cases in dozens of states. Proceeding collectively will promote judicial efficiency and serve the FLSA's purposes.

## II. Plaintiffs' Motions to Strike Are Moot

Plaintiffs also move to strike various exhibits from Defendant's decertification motion.[25] They claim that Defendant did not disclose some of the declarants or produce their statements in discovery.[26]

Plaintiffs move separately to strike Jonathan L. Walker's expert declaration from Defendant's decertification motion.[27] They argue that his declaration does not apply an appropriate methodology, lacks supporting data, fails to cite authoritative text, and does not qualify as an expert report.[28]

However, even considering the objected-to evidence, the Court would deny Defendant's decertification motion. As such, the Court denies these motions as moot—without prejudice to raise the same objections in later contexts.

## III. Conclusion

For the foregoing reasons, the Court **DENIES** Defendant's motion to decertify and Plaintiffs' motions to strike.

IT IS SO ORDERED.

Dated: February 21, 2019               *s/      James S. Gwin*
                                       JAMES S. GWIN
                                       UNITED STATES DISTRICT JUDGE

---

[25] Doc. 126.
[26] *Id.*
[27] Doc. 129.
[28] Doc. 129-1 at 2.