**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO**

| | |
|---|---|
| ERIN E. KIS, on behalf of herself and all others similarly situated,<br><br>                        Plaintiff,<br><br>      v.<br><br><br>COVELLI ENTERPRISES, INC.,<br><br><br>                     Defendant. | Case No. 4:18-cv-00054-JG |
| CHELSEA ROMANO, individually and on behalf of all others similarly situated,<br><br>                      Plaintiff,<br><br>      v.<br><br>COVELLI ENTERPRISES, INC.,<br><br>                     Defendant. | Case No. 4:18-cv-00434-JG |

**MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT, CONDITIONAL CERTIFICATION OF SETTLEMENT
CLASS, APPROVAL OF FLSA SETTLEMENT, APPOINTMENT OF PLAINTIFFS'
COUNSEL AS CLASS COUNSEL, AND APPROVAL OF THE PROPOSED
<u>NOTICES OF SETTLEMENT AND CLASS ACTION SETTLEMENT PROCEDURE</u>**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ........................................................................................................... 1

FACTUAL AND PROCEDURAL HISTORY ............................................................... 1

I.      Investigation, Initial Litigation, and Early Settlement Negotiations ................................. 1

II.     Continued Litigation ........................................................................................................ 2

        A.      Opt-In Period ....................................................................................................... 2

        B.      Motion Practice .................................................................................................... 3

        C.      Discovery ............................................................................................................. 3

        D.      Trial Preparation .................................................................................................. 4

III.    Ohio Class Action Lawsuit ............................................................................................. 5

IV.    Continued Settlement Negotiations and Settlement Agreement ...................................... 5

SUMMARY OF SETTLEMENT TERMS ..................................................................... 6

I.      The Settlement Fund ........................................................................................................ 6

II.     Settlement Class and FLSA Collective ........................................................................... 6

III.    Settlement Awards ........................................................................................................... 7

IV.    Releases ............................................................................................................................ 7

V.      Attorneys' Fees and Costs and Enhancement Awards ..................................................... 8

VI.    Claims Administrator and Notices to Class and Collective Members .............................. 8

VII.   State Court Complaint ..................................................................................................... 9

ARGUMENT .................................................................................................................... 9

I.      Preliminary Approval of the Settlement as to the Class is Appropriate ............................ 9

        A.      The Settlement is Fair ......................................................................................... 10

            1.      Plaintiffs Have a Strong Case as to Both Liability and Damages ............. 11

            2.      Plaintiffs and the Class Members Would Face Real Risks in Further Litigation .................................................................................................... 12

3. Further Litigation Would be Lengthy, Complex, and Costly ................... 13

4. Maintaining the Class Through Trial Would Not Be Simple ................. 14

5. The Recovery in the Settlement is Substantial ........................................... 14

6. The Parties Engaged in Sufficient Discovery ............................................ 15

7. Experienced Counsel Recommend Approval ............................................. 15

8. The Reaction of the Class is a Neutral Factor........................................... 16

9. Approval is in the Public Interest............................................................... 16

10. Defendant's Ability to Withstand a Judgment is Neutral ......................... 17

B. Conditional Certification of the Class is Appropriate............................................ 17

1. Numerosity.................................................................................................. 18

2. Commonality............................................................................................... 18

3. Typicality .................................................................................................... 19

4. Adequacy .................................................................................................... 20

5. The Class Meets the Requirements of Rule 23(b)(3)................................ 20

i. Common Questions Predominate ................................................. 21

ii. A Class Action is Superior to Individual Actions........................ 22

C. Plaintiffs' Counsel Should be Appointed as Class Counsel ................................ 22

D. Plaintiffs' Notice Plan and Award Distribution Process are Appropriate ........... 23

II. Final Approval of the Settlement as to the FLSA Collective is Appropriate ................... 24

A. The Settlement is Fair as to the FLSA Collective Members ................................ 24

1. A Bona Fide Dispute Exists between the Parties...................................... 25

2. The FLSA Settlement is Fair and Reasonable ......................................... 26

B. The Notice of Settlement and Award Distribution Process are Appropriate ........ 28

CONCLUSION.................................................................................................................... 29

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                      **Page(s)**

*Alleyne v. Time Moving & Storage Inc.*,
    264 F.R.D. 41 (E.D.N.Y. 2010) ........................................................................................14

*In re Am. Med. Sys., Inc.*,
    75 F.3d 1069 (6th Cir. 1996) ...................................................................................19, 20

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997)...................................................................................................22

*Aro Corp. v. Allied Witan Co.*,
    531 F.2d 1368 (6th Cir. 1976) ..................................................................................10

*In re Austrian & German Bank Holocaust Litig.*,
    80 F. Supp. 2d 164 (S.D.N.Y. 2000)........................................................................17

*Barrentine v. Ark.-Best Freight Sys., Inc.*,
    450 U.S. 728 (1981)...................................................................................................27

*Bellinghausen v. Tractor Supply Co.*,
    306 F.R.D. 245 (N.D. Cal. 2015) ..............................................................................14

*Bert v. AK Steel Corp.*,
    No. 02 Civ. 467, 2008 WL 4693747 (S.D. Ohio Oct. 23, 2008) ...............................16

*Bozak v. Fedex Ground Package Sys., Inc.*,
    No. 11 Civ. 738, 2014 WL 3778211 (D. Conn. July 31, 2014)................................24

*Bradford v. Legacy Health Servs.*,
    No. 13 Civ. 218, 2014 WL 7185453 (N.D. Ohio Dec. 16, 2014)..............................24, 25, 26

*Bravo v. 57th Rest. Assocs. LLC*,
    No. 14 Civ. 8492, 2015 WL 1283659 (S.D.N.Y. Apr. 9, 2015)...............................24

*In re Broadwing, Inc. ERISA Litig.*,
    252 F.R.D. 369 (S.D. Ohio 2006) .............................................................................10

*Castillo v. Morales, Inc.*,
    302 F.R.D. 480 (S.D. Ohio 2014) .............................................................................18, 26, 27, 28

*Combs v. TrueGreen Ltd. P'ship*,
    No. 08 Civ. 489, 2010 WL 11636094 (S.D. Ohio Sept. 2, 2010).........................17, 19, 22, 26

*Craig v. Bridges Bros. Trucking LLC*,
    823 F.3d 382 (6th Cir. 2016) ....................................................................................12

*Crawford v. Lexington-Fayette Urban Cty. Gov't*,
  No. 06 Civ. 299, 2008 WL 4724499 (E.D. Ky. Oct. 23, 2008) ...................................25, 26, 28

*Dillworth v. Case Farms Processing, Inc.*,
  No. 08 Civ. 1694, 2010 WL 776933 (N.D. Ohio Mar. 8, 2010)...........................18, 25, 27, 28

*Edwards v. City of Mansfield*,
  No. 15 Civ. 959, 2016 WL 2853619 (N.D. Ohio May 16, 2016) ...........................................24

*Ehrheart v. Verizon Wireless*,
  609 F.3d 590 (3d Cir. 2010).................................................................................................17

*Farrell v. Covelli Enterprises*,
  No. 19 Civ. 911857 (Cuyahoga Cnty.) ...................................................................................1

*Gen. Tel. Co. of Sw. v. Falcon*,
  457 U.S. 147 (1982).............................................................................................................18

*Gentrup v. Renovo Servs., LLC*,
  No. 07 Civ. 430, 2011 WL 2532922 (S.D. Ohio June 24, 2011)................................13, 27, 28

*Hamilton v. Ohio Savings Bank*,
  82 Ohio St. 3d 67 (1998).....................................................................................................14

*Hedglin v. Maxim Healthcare Servs., Inc.*,
  No. 15 Civ. 2614, 2016 WL 6248317 (N.D. Ohio Oct. 26, 2016) .........................................26

*Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. v. Gen.
  Motors Corp.*,
  497 F.3d 615 (6th Cir. 2007) ...............................................................................................10

*In re Inter-Op Hip Prosthesis Liab. Litig.*,
  204 F.R.D. 330 (N.D. Ohio 2001) ...........................................................................11, 20, 22

*Jones v. Agilysys, Inc.*,
  No. 12 Civ. 03516, 2014 WL 2090034 (N.D. Cal. May 19, 2014) ........................................14

*Kis v. Covelli Enters., Inc.*,
  No. 18 Civ. 434, 2018 WL 2227782 (N.D. Ohio May 16, 2018) ..........................................2, 6

*Kritzer v. Safelite Sols., LLC*,
  No. 10 Civ. 729, 2012 WL 1945144 (S.D. Ohio May 30, 2012)......................................19, 20

*Levell v. Monsanto Research Corp.*,
  191 F.R.D. 543 (S.D. Ohio 2000) ....................................................................................15, 16

*Lynn's Food Stores, Inc. v. United States*,
  679 F.2d 1350 (11th Cir. 1982) .......................................................................................24, 25

v

*Martin v. Behr Dayton Thermal Prods. LLC*,
    896 F.3d 405 (6th Cir. 2018) ................................................21

*McDonald v. Franklin Cty.*,
    306 F.R.D. 548 (S.D. Ohio 2015) ...........................................19

*McKenna v. Champion Int'l Corp.*,
    747 F.2d 1211 (8th Cir. 1984) ...............................................24

*Perez v. Allstate Ins. Co.*,
    No. 11 Civ. 1812, 2014 WL 4635745 (E.D.N.Y. Sept. 16, 2014) ...........23

*Pipefitters Local 636 Ins. Fund v. BCBS of Mich.*,
    654 F.3d 618 (6th Cir. 2011) .................................................22

*Powell v. Lakeside Behavioral Healthcare, Inc.*,
    No. 11 Civ. 719, 2011 WL 5855516 (M.D. Fla. Nov. 22, 2011)............24

*Prena v. BMO Fin. Corp.*,
    No. 15 Civ. 9175, 2015 WL 2344949 (N.D. Ill. May 15, 2015) ............24

*Pund v. City of Bedford*,
    339 F. Supp. 3d 701 (N.D. Ohio 2018)...................................21

*Robinson v. Shelby Cty. Bd. of Educ.*,
    566 F.3d 642 (6th Cir. 2009) ...........................................10, 16

*Romano v. Covelli Enters., Inc.*,
    No. 18 Civ. 434 (N.D. Ohio Feb. 22, 2018), ECF No. 1 ....................2, 6

*Rotuna v. W. Customer Mgmt. Grp., LLC*,
    09 Civ. 1608, 2010 WL 2490989 (N.D. Ohio June 15, 2010)........................ *passim*

*Schneider v. Goodyear Tire & Rubber Co.*,
    No. 13 Civ. 2741, 2014 WL 2579637 (N.D. Ohio June 9, 2014) ...............24, 25, 26

*Senter v. Gen. Motors Corp.*,
    532 F.2d 511 (6th Cir. 1976) .........................................19, 20

*Sharier v. Top of the Viaduct, LLC*,
    No. 16 Civ. 343, 2017 WL 961029 (N.D. Ohio Mar. 13, 2017)............26

*Snelling v. ATC Healthcare Servs. Inc.*,
    No. 11 Civ. 983, 2012 WL 6042839 (S.D. Ohio Dec. 4, 2012) .............18

*Stanley v. Turner Oil & Gas Props., Inc.*,
    No. 16 Civ. 386, 2018 WL 2268138 (S.D. Ohio Mar. 6, 2018) ...........10, 11, 17, 18

*Stanley v. Turner Oil & Gas Props., Inc.*,
    No. 16 Civ. 386, 2018 WL 2928028 (S.D. Ohio June 12, 2018)......................................11, 18

*In re Telectronics Pacing Sys., Inc.*,
    137 F. Supp. 2d 985 (S.D. Ohio 2001) ................................................................................13

*Tyson Foods, Inc. v. Bouaphakeo*,
    136 S. Ct. 1036 (2016)........................................................................................................21

*Vassalle v. Midland Funding, LLC*,
    No. 11 Civ. 96, 2014 WL 5162380 (N.D. Ohio Oct. 14, 2014) ...........................................12

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*,
    722 F.3d 838 (6th Cir. 2013) .........................................................................................18, 22

*In re Whirlpool Corp. Front-Loading Washer Products Liability Litig.*,
    No. 08 Civ. 65000, 2016 WL 5338012 (N.D. Ohio Sept. 23, 2016) ....................................14

*Wright v. Premier Courier, Inc.*,
    No. 16 Civ. 420, 2018 WL 3966253 (S.D. Ohio Aug. 17, 2018) ....................................15, 16

**Other Authorities**

Fed. R. Civ. P. 23(a) ..............................................................................................17, 18, 19, 20

Fed. R. Civ. P. 23(b) ..............................................................................................17, 20, 21, 22

Fed. R. Civ. P. 23(c) ........................................................................................................................23

Fed. R. Civ. P. 23(e) ........................................................................................................................10

Fed. R. Civ. P. 23(g) ........................................................................................................................22

4 William B. Rubenstein et al., *Newberg on Class Actions* § 13:1 (5th ed. 2018) .......................10

Fed. Jud. Ctr. Model Notice,
    https://www.fjc.gov/sites/default/files/2016/ClaAct11.pdf .....................................................23

**INTRODUCTION**

After fourteen months of litigation and while preparing for trial, Plaintiffs Erin Kis and Chelsea Romano and Defendant Covelli Enterprises, Inc., have agreed to resolve this wage and hour action for $4,625,000, subject to Court approval.[1]  If approved, the settlement will provide significant monetary awards to (1) the individuals who have already opted to join this action as members of the FLSA collective ("FLSA Collective Members"), and (2) a Rule 23 class of Ohio workers with parallel state law claims ("Class Members").  The terms of the proposed settlement are set forth in the Joint Stipulation of Settlement and Release ("Settlement Agreement"),[2] attached as Exhibit A.

Plaintiffs respectfully request that the Court (1) grant preliminary approval of the class settlement; (2) provisionally certify the Rule 23 class for settlement purposes; (3) appoint Plaintiffs' Counsel as Class Counsel; (4) approve the proposed Notices of Settlement and Claim Form attached as Exhibits A, B, C, and D to the Settlement Agreement and direct their distribution; and (5) approve the FLSA settlement and payment distribution process for FLSA Collective Members.  Covelli does not oppose this motion.

**FACTUAL AND PROCEDURAL HISTORY**

I.      **Investigation, Initial Litigation, and Early Settlement Negotiations**

Plaintiffs, who worked as Assistant Managers ("AMs") at Covelli's Panera cafés, allege that Covelli misclassified them and other AMs as exempt from overtime protections and failed to

---

[1]      If approved, the settlement will also dispose of a parallel state law action, *Farrell v. Covelli Enterprises*, No 19 Civ. 911857 (Cuyahoga Cnty.).

[2]      Unless otherwise indicated, all capitalized terms have the definitions set forth in the Stipulation.  As of the time of filing, the parties were still awaiting several signatures on the Agreement.  The parties will promptly supplement this submission with a fully executed copy of the Agreement once all parties have signed.

pay them any overtime wages for hours that they worked over 40 in a workweek.

On April 18, 2016, Plaintiff Chelsea Romano contacted Covelli in an effort to explore pre-litigation resolution of AMs' collective and class claims.  Covelli declined to engage in settlement discussions.  Plaintiffs subsequently filed collective and class action lawsuits against Covelli on January 9, 2018 and February 22, 2018, which were later consolidated.[3]  Plaintiffs immediately moved for conditional certification, which the Court granted on May 16, 2018.[4]

After conditional certification, the parties agreed to attend a settlement conference before notice issued to the proposed collective.[5]  The parties exchanged information relating to calculating damages, including summary information for 2,056 current and former AMs employed by Covelli from June 28, 2015 to the present.[6]  On July 23, 2018, the parties attended the settlement conference with Magistrate Judge Baughman, but were too far apart and unable to reach a settlement.[7]

## II.    Continued Litigation

### A.    Opt-In Period

After the parties' unsuccessful mediation, on August 15, 2018, Plaintiffs sent FLSA notice to more than 1,670 AMs.[8]  Ultimately, 498 people joined the case.[9]

---

[3]    ECF No. 1; Complaint, *Romano v. Covelli Enters., Inc.*, No. 18 Civ. 434 (N.D. Ohio Feb. 22, 2018), ECF No. 1; ECF No. 28.

[4]    ECF No. 29; *Kis v. Covelli Enters., Inc.*, No. 18 Civ. 434, 2018 WL 2227782, at *1 (N.D. Ohio May 16, 2018).

[5]    Swartz Decl. ¶ 22.

[6]    *Id.*

[7]    *Id.* ¶ 23.

[8]    *Id.* ¶ 24.

[9]    *Id.* ¶ 24.  Plaintiffs previously represented to the Court that 577 individuals had opted in to this action.  *See* ECF No. 161 (Plaintiffs' Proposed Trial Plan) at 1.  However, the parties later determined that some individuals opted in to the action that were not actually employed by Covelli.  The accurate number of FLSA Collective Members is 483.

2

### B.      Motion Practice

On November 5, 2018, Covelli filed its motion to decertify the collective, which Plaintiffs opposed.[10]  Two days later, Plaintiffs filed a motion to strike certain exhibits, as well as a *Daubert* motion to strike the declaration of Covelli's proposed expert that Covelli submitted in support of its decertification motion.[11]

On February 21, 2019, after oral argument, the Court denied Covelli's motion to decertify and denied as moot Plaintiffs' motions without prejudice to renewal.[12]  Plaintiffs later renewed their motion to exclude testimony by Covelli's expert, which Covelli opposed and was pending at the time of settlement.[13]

### C.      Discovery

The parties engaged in substantial discovery.  Plaintiffs propounded 84 document requests and 27 interrogatories, produced documents, and reviewed thousands of documents that Covelli produced.[14]  Plaintiffs deposed five witnesses, including Covelli's CEO, COO, expert, a Recruiting Director, and an Area Manager.  Covelli deposed nine Opt-in Plaintiffs.  Plaintiffs also served two separate third-party subpoenas on Panera LLC and a firm that represented AMs in a separate case against Covelli.  In total, the parties attended seven discovery conferences, including multiple at which the Court required Plaintiffs' in-person attendance.

The parties had numerous discovery disputes about the scope and search terms for Electronically Stored Information ("ESI"), proper ESI custodians, the scope of store-level

---

[10]      ECF Nos. 125, 130, 133.
[11]      ECF No. 126, 129.
[12]      ECF No. 165.
[13]      ECF Nos. 202, 206.
[14]      Swartz Decl. ¶ 27.

discovery, and the identification of responsive documents, among other issues.[15]  These disputes required hundreds of hours of attorney work, including months of negotiations, at times weekly meet-and-confer calls, and multiple letters to the Court.[16]  Plaintiffs filed several letter motions raising issues regarding Covelli's refusal to produce various documents and certain witnesses for deposition.[17]  These disputes led to many of the aforementioned conferences with the Court.[18]

Covelli also moved to compel depositions of Opt-in Plaintiffs who had not provided availability for depositions, which Plaintiffs opposed.[19]  At the March 15, 2019 Court conference, the Court granted Covelli's motion to compel but denied its motions for sanctions.[20]

### D.    Trial Preparation

The Court initially set the trial date for December 10, 2018, but reset it for March 19, 2019 after the parties' first unsuccessful settlement conference.[21]  The Court later continued the trial date to April 29, 2019.[22]  On February 19, 2019, pursuant to the Court's order, Plaintiffs filed their trial plan, which Covelli opposed.[23]  On April 15, 2019, the Court postponed trial until July 22, 2019.[24]

Because the Court's schedule provided for a very tight discovery deadline, Plaintiffs began preparing for trial expeditiously.  In preparation for trial, Plaintiffs interviewed nearly forty potential opt-in witnesses and former managers.[25]  Plaintiffs drafted a trial plan and reply in

---

[15]    *Id.* ¶ 30.
[16]    *Id.* ¶ 31; *see also, e.g.*, ECF Nos. 107, 123, 152.
[17]    ECF Nos. 107, 152.
[18]    ECF Nos. 137, 158, 187.
[19]    ECF Nos. 179, 180.
[20]    ECF No. 187.
[21]    ECF Nos. 26, 64.
[22]    ECF No. 142.
[23]    ECF Nos. 157, 173.
[24]    ECF Minute Entry dated April 15, 2019.
[25]    Swartz Decl. ¶ 34.

support of it, jury instructions, and cross-examinations. They researched jury consultants, began to prepare motions *in limine*, negotiated trial stipulations with Covelli's counsel, identified trial exhibits, and coordinated travel and technology logistics for trial.

## III. Ohio Class Action Lawsuit

On February 28, 2019, Saidah Farrell and Mariah Hall (together, the "Ohio Plaintiffs") filed a class action complaint against Covelli for overtime compensation under the Ohio Minimum Fair Wage Standards Act ("Ohio Wage Act"), alleging that Covelli misclassified them and a Class of other AMs who worked for Covelli at its Ohio Panera Bread locations as exempt from the overtime provisions of the Ohio Wage Act.[26] No further litigation took place in the action, as Covelli soon expressed an interest in a global settlement.[27]

## IV. Continued Settlement Negotiations and Settlement Agreement

On March 15, 2019, following a status conference with the Court, the parties attended a settlement conference before Magistrate Judge Greenberg.[28] The parties were unable to reach a resolution at the settlement conference but continued to negotiate. They attended another settlement conference with Magistrate Judge Greenberg on April 3, 2019, which also did not result in a settlement.[29] The parties subsequently agreed to attend a private mediation with Bradley Sherman, which took place on May 2, 2019.[30] After a full day of mediation that extended well beyond the close-of-business, the parties reached an agreement-in-principle to

---

[26]  Ex. B (Ohio Complaint). Plaintiff Kis's complaint, ECF No. 1, alleges class claims on behalf of a Class, but Plaintiff Kis was not able to file a motion for class certification by the Court-ordered deadline. Swartz Decl. ¶ 39.

[27]  Swartz Decl. ¶ 38.

[28]  ECF No. 186.

[29]  ECF No. 198.

[30]  Swartz Decl. ¶ 42.

resolve the matters globally for $4,625,000.[31]

## SUMMARY OF SETTLEMENT TERMS

### I.    The Settlement Fund

Covelli has agreed to pay up to $4,625,000 (the "Settlement Amount") to resolve the AMs' class and collective action claims.[32]  The Settlement Amount covers payments to FLSA Collective Members as well as Class Members who return Claim Forms and do not exclude themselves, litigation costs, any Court-approved Enhancement Awards to Named Plaintiffs, any Court-approved attorneys' fees and costs, the Claims Administrator's fees and costs, and the employee's share of payroll taxes.[33]  Out of the Settlement Amount, $3,725,000.00 will be allocated to the settlement of the FLSA collective action claims of FLSA Collective Members, and the remaining $900,000 will be allocated to Class Members.[34]

### II.   Settlement Class and FLSA Collective

The Class consists of all persons employed by Covelli as AMs in Ohio anytime between January 9, 2016 and the date the Agreement was executed, except that any individual who timely submits a valid request for exclusion shall not be included in the Class.  The total number of Class Members eligible to participate in the settlement is approximately 614.[35]

The FLSA Collective consists of all persons who joined the *Kis* and *Romano* action by filing consent to join forms and who worked as AMs for Covelli during the three years prior to

---

[31]    *Id.* ¶ 44; Ex. A (Settlement Agreement) ¶ 3.1(A).
[32]    *Id.* ¶ 3.1(A).
[33]    *Id.* ¶ 3.1(A).
[34]    *Id.* ¶ 3.1.
[35]    Swartz Decl. ¶ 47.  FLSA Collective Members who are also Class Members will be compensated from the $3,725,000 allocated to FLSA Collective Members.  Approximately 136 FLSA Collective Members are also Class Members.  *Id.*

filing their consent to join forms.[36]  FLSA Collective Members who worked in Ohio during the Class Period, of which there are approximately 136, are also Class Members.[37]

## III.    Settlement Awards

All Claimants will be paid a pro-rata portion of the Net Settlement Payment pursuant to an allocation formula based on the number of weeks they worked during the relevant period.[38] An individual who is both a Class Member and an FLSA Collective Member will receive only one (1) point for any one calendar workweek.  Funds that are unclaimed by Class Members shall be returned to Defendant by the Claims Administrator.[39]

## IV.    Releases

Upon entry of the Final Order and Approval by the Court, (i) each Claimant will release state and federal claims for unpaid overtime and minimum wage claims, and related claims for penalties, interest, liquidated damages, attorneys' fees, and expenses that accrued prior to the date the Settlement Agreement was executed; (ii) each Qualified Class Member will release state claims for unpaid overtime and minimum wage claims, and related claims for penalties, interest, liquidated damages, attorneys' fees, and expenses that accrued prior to the date the Settlement Agreement was executed; and (iii) each FLSA Collective Member will release federal wage and hour claims that arise from his or her employment as an exempt classified Assistant Manager and related claims for penalties, interest, liquidated damages, attorneys' fees, and expenses that accrued prior to the date the date the Settlement Agreement was executed.[40]  Other than FLSA Collective Members who are also Class Members, Class Members who have not submitted

---

[36]    Settlement Agreement ¶ 1.19.
[37]    *Id.* ¶ 1.9.
[38]    *Id.* ¶ 3.5(A).
[39]    *Id.* ¶ 3.5(B).
[40]    *Id.* ¶ 3.7(A)(1)-(3).

timely and valid Claim Forms will still be bound by the Settlement and the Release but will not be entitled to receive payment under the Settlement.[41]

## V.    Attorneys' Fees and Costs and Enhancement Awards

Plaintiffs' Counsel will apply for one-third of the Settlement Amount as attorneys' fees plus reimbursement of reasonable out-of-pocket costs.[42]  Plaintiffs will also apply for Enhancement Awards of $12,500 each for Plaintiffs Erin Kis and Chelsea Romano and $2,500 each for Ohio Plaintiffs Saidah Farrell and Mariah Hall.[43]  Plaintiffs will move separately for Court approval of their attorneys' fees and costs as well as the Enhancement Awards along with their Motion for Final Order and Judgment.[44]

## VI.    Claims Administrator and Notices to Class and Collective Members

The parties have selected Rust Consulting as the third-party settlement claims administrator ("Claims Administrator") to send the Notices to the Class and FLSA Collective Members and administer payment of the settlement to Class and FLSA Collective Members.[45]

The Settlement Agreement provides for three Notices: (1) the Notice of Settlement of Collective Action Lawsuit and Fairness Hearing (to be sent to Class Members); (2) the Notice of Settlement of Class Action Lawsuit and Fairness Hearing (to be sent to FLSA Collective Members who are not also Class Members), (3) and the Notice of Settlement of Class and Collective Action Lawsuit and Fairness Hearing (to be sent to FLSA Collective Members who

---

[41]     *Id.* ¶ 3.7(D).  Named Plaintiffs will also agree to a General Release in exchange for their Enhancement Payments.  *Id.* ¶ 3.7(B).
[42]     *Id.* ¶ 3.2(A).
[43]     *Id.* ¶ 3.3.
[44]     *Id.* ¶ 3.2(A).
[45]     *Id.* ¶ 1.8.

are also Class Members).[46]

The Notices will inform FLSA Collective Members and Class Members of their rights under this Agreement and of their estimated individual settlement amounts.[47]  The notices to FLSA Collective Members (including those who are also Class Members) will also include a check in the amount of each FLSA Collective Member's individual settlement amount.[48]  FLSA Collective Members will have 120 days after each check date to redeem their settlement payments.[49]  In addition, the Notice of Settlement of Class Action Lawsuit and Fairness Hearing to be sent to Class Members who are not also FLSA Collective Members and will advise Class Members of how to submit a Claim Form, of their right to exclude themselves from the settlement and how to do so, and of their right to object.[50]  The deadline for submitting a Claim Form, opting out, or objecting will be 60 days from the mailing of the Notice.[51]

## VII.    State Court Complaint

Within ten days of the execution of the Agreement, the Parties shall stipulate to the dismissal with prejudice of the Ohio state court action.  Because Plaintiff Kis alleged claims on behalf of a Class of Ohio AMs, this Court has jurisdiction over the Class's claims.

## ARGUMENT

## I.    Preliminary Approval of the Settlement as to the Class is Appropriate.

Plaintiffs request the Court grant preliminary approval of the Settlement Agreement as to

---

[46]    *See* Settlement Agreement Ex. A (Notice to FLSA Collective Members); Settlement Agreement Ex. B (Notice to Class Members); Settlement Agreement Ex. C (Notice to FLSA Collective Members who are also Class Members).
[47]    Settlement Agreement ¶ 1.8.
[48]    *Id.*
[49]    *Id.* ¶ 3.5(E); Settlement Agreement Ex. A, Ex. C.
[50]    Settlement Agreement ¶ 2.4(C); Settlement Agreement Ex. B.
[51]    Settlement Agreement ¶ 2.5(A); Settlement Agreement Ex. B, Ex. C.

the Class.  The procedure for approving class action involves three steps: (1) preliminary approval of the proposed settlement after submission to the court of a written motion; (2) notice of the settlement to all class members; and (3) a final settlement approval hearing where the court will consider whether the settlement is fair, adequate, and reasonable such that it should be approved.[52]

Here, Plaintiffs respectfully request that the Court take the first step by granting preliminary approval of the Settlement Agreement as to the Class Members, conditionally certifying the Class, appointing Plaintiffs' Counsel as Class Counsel, and approving Plaintiffs' proposed Notices and distribution process to the Class.

### A.  The Settlement is Fair.

"[S]ettlement of class actions is generally favored and encouraged."[53]  Courts encourage early class settlements, which allow class members to recover without undue delay and preserve judicial resources.[54]  The Court must determine whether the class settlement is "fair, reasonable, and adequate."[55]  A preliminary approval inquiry "is not an onerous one" and is ordinarily "made on the basis of information already known, supplemented as necessary by briefs, motions, or

---

[52]    Fed. R. Civ. P. 23(e) & advisory committee's note to 2018 amendment; *see also* 4 William B. Rubenstein et al., *Newberg on Class Actions* § 13:1 (5th ed. 2018).

[53]    *In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369, 371 (S.D. Ohio 2006); *see also Robinson v. Shelby Cty. Bd. of Educ.*, 566 F.3d 642, 648 (6th Cir. 2009) ("[P]ublic policy strongly favors settlement of disputes without litigation . . . ."); *Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 632 (6th Cir. 2007) ("[F]ederal policy favor[s] settlement of class actions . . . .").

[54]    *Aro Corp. v. Allied Witan Co.*, 531 F.2d 1368, 1372 (6th Cir. 1976) ("By such agreements are the burdens of trial spared to the parties, to other litigants waiting their turn before over-burdened courts, and to the citizens whose taxes support the latter.  An amicable compromise provides the more speedy and reasonable remedy for the dispute.").

[55]    *Stanley v. Turner Oil & Gas Props., Inc.*, No. 16 Civ. 386, 2018 WL 2268138, at *2 (S.D. Ohio Mar. 6, 2018).

informal presentations by parties."[56]  Where a settlement is not collusive and instead "appears to fall within the range of possible approval," a court should grant preliminarily approval.[57]

Courts balance numerous factors to preliminarily assess the fairness of a proposed settlement, including:

> (1) the strength of plaintiffs' case, both as to liability and damages; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; (7) the reaction of the class members to the proposed settlement; (8) the public interest; and (9) the ability of the defendants to withstand a greater judgment.[58]

As explained below, because these factors strongly weigh in favor of preliminary approval in this case, the Court should grant preliminary approval of the Settlement as to the Class and direct that notice of the Fairness Hearing be given to the Class.

### 1. Plaintiffs Have a Strong Case as to Both Liability and Damages.

Plaintiffs' Ohio Wage Act claim is strong.  Nearly identical to the FLSA claim, Plaintiffs claim that AMs employed by Covelli at its Ohio Panera Bread locations were improperly classified as exempt from Ohio's overtime provisions.[59]  Instead of performing exempt, managerial tasks, Ohio AMs primarily performed manual tasks such as taking orders, serving customers, preparing food, working the cash register, and cleaning.[60]

---

[56]     *Id.* at *1; *see also In re Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. 330, 337 (N.D. Ohio 2001) ("*In re Inter Op Litig.*") ("[T]his threshold inquiry often involves no more than an informal presentation of the parties' proposals to the Court.").

[57]     *In re Inter-Op Litig.*, 204 F.R.D. at 352; *see also Stanley*, 2018 WL 2268138, at *1.

[58]     *In re Inter-Op Litig.*, 204 F.R.D. at 351; *see also Stanley v. Turner Oil & Gas Props., Inc.*, No. 16 Civ. 386, 2018 WL 2928028, at *4 (S.D. Ohio June 12, 2018) (listing also "risk of fraud or collusion" and "the reaction of *absent* class members" as factors in a Rule 23 settlement approval analysis (emphasis added) (quoting *Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235, 244 (6th Cir. 2011)).

[59]     Swartz Decl. ¶ 36; Ex. B (Ohio Complaint) ¶ 2.

[60]     Ex. B (Ohio Complaint) ¶¶ 42(a)-(f).

Plaintiffs are confident that their claims are strong because the analogous federal claim has been heavily litigated in this action and shows that AMs, including Ohio AMs, are likely misclassified as exempt.  The Plaintiffs in the FLSA action were conditionally certified as a collective, survived a decertification motion, and developed a robust factual record through extensive discovery.[61]  Because Ohio Wage Act claims are analyzed under the same standards as FLSA claims,[62] Plaintiffs are confident in their position even though the complaint was only recently filed.

### 2. Plaintiffs and the Class Members Would Face Real Risks in Further Litigation.

Despite the strength of Plaintiffs' claims, they fully recognize that they would face legal and procedural hurdles in establishing class-wide liability and damages.  As a general matter, "complex litigation is 'notoriously difficult and unpredictable.'"[63]  Plaintiffs recognize the possibility that, if not settled now, the case could result in a recovery far less favorable to the Class Members—or none at all.[64]  They are also aware that if the action continued, any recovery for the Class Members may not occur for several years.

Plaintiffs' case would face challenges from Covelli on both liability and damages, which would present risks and could require substantial factual development regarding Plaintiffs' and Class Members' job duties and Covelli's corporate structure.  Covelli would likely claim that AMs' primary job duty is management, assert exemption defenses, and argue that differences in

---

[61]    Swartz Decl. ¶¶ 22-25, 27-32.

[62]    *Craig v. Bridges Bros. Trucking LLC*, 823 F.3d 382, 385 n.1 (6th Cir. 2016) ("Because the FLSA and the [Ohio Wage Act] have the same overtime requirements, the outcomes will be the same and the claims can be evaluated together.").

[63]    *Vassalle v. Midland Funding, LLC*, No. 11 Civ. 96, 2014 WL 5162380, at *6 (N.D. Ohio Oct. 14, 2014) (citation omitted).

[64]    Swartz Decl. ¶¶ 53-54.

Class Members' duties precludes class certification. Both challenges would require Plaintiffs to develop a strong factual record in discovery to adequately respond. And even if Plaintiffs prevailed on the issue of liability, Covelli would likely contest any damages award, advocating for application of the fluctuating workweek method of calculating overtime pay. Plaintiffs and their counsel, who are experienced class action employment lawyers, particularly in wage and hour cases, understand the outcome of these issues is uncertain and the duration of further litigation unknown.[65] In light of these risks, Plaintiffs have agreed to resolve the claims before trial. Thus, this factor weighs in favor of approval.

### 3. Further Litigation Would be Lengthy, Complex, and Costly.

By reaching a favorable settlement prior to dispositive motions, class certification, or trial, Plaintiffs seek to avoid significant expense, risk, and delay, and instead ensure a recovery for Class Members. "Most class actions are inherently complex and settlement avoids the costs, delays, and multitude of other problems associated with them."[66] This case is no exception, with approximately 465 Class Members bringing factually and legally complex claims.[67]

Further litigation would cause additional expense and delay. Plaintiffs would need to engage in fact discovery to establish liability, damages, and that class certification is appropriate. The parties would expect voluminous briefing if either party files a motion for summary judgment and, if the Court determines factual disputes bar summary judgment, the case would go to trial – a time- and resource-intensive endeavor. Even after trial or summary judgment, either

---

[65]     Swartz Decl. ¶¶ 46, 53-54.

[66]     *In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d 985, 1013 (S.D. Ohio 2001) (quoting *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000), *aff'd sub nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001)).

[67]     *See Gentrup v. Renovo Servs., LLC*, No. 07 Civ. 430, 2011 WL 2532922, at *4 (S.D. Ohio June 24, 2011) (noting that wage and hour cases are "frequently complex matters").

party might appeal.  This Settlement, however, provides significant relief to Class Members in a prompt and efficient manner.  Therefore, this factor weighs in favor of preliminary approval.

### 4.    Maintaining the Class Through Trial Would Not Be Simple.

As explained above, obtaining class certification and maintaining it through trial would present a risk.[68]  The state court has not yet certified a class.[69]  Settlement eliminates the risk, expense, and delay that permeate that process.

### 5.    The Recovery in the Settlement is Substantial.

The parties have agreed to settle this case for a maximum total of $4,625,000 ($900,000 of which will be allocated to Class Members), an excellent value for the Class Members given the risks in the litigation.  For the approximately 478 putative Class Members who are not also FLSA Collective Members, Plaintiffs estimate that Class Members will recover 33% of estimated owed overtime wages.[70]  This amount is consistent – if not greater – than settlements reached in similar cases in this Circuit[71] and beyond.[72]

---

[68]    *Hamilton v. Ohio Savings Bank*, 82 Ohio St. 3d 67, 70 (1998) ("The trial court is required to carefully apply the class action requirements and conduct a rigorous analysis into whether the prerequisites of Civ. R. 23 have been satisfied.").

[69]    Swartz Decl. ¶ 38.

[70]    *Id.* ¶ 48.

[71]    *See In re Whirlpool Corp. Front-Loading Washer Products Liability Litig.*, No. 08 Civ. 65000, 2016 WL 5338012, at *22 (N.D. Ohio Sept. 23, 2016) (benefit to class is "substantial" where "the benefits available to class members under the Settlement Agreement compare very favorably to the best-case damages the class could have obtained at trial"); *Rotuna v. W. Customer Mgmt. Grp., LLC*, 09 Civ. 1608, 2010 WL 2490989, at *8 (N.D. Ohio June 15, 2010) (this Court, describing recovery of 75% to 25% of claimed wages as "exceptional").

[72]    *See Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 256 (N.D. Cal. 2015) (finding a wage and hour class settlement was fair where the settlement fund represented between 9% and 27% of the total potential recovery); *Jones v. Agilysys, Inc.*, No. 12 Civ. 03516, 2014 WL 2090034, at *2 (N.D. Cal. May 19, 2014) (finding a FLSA settlement that constituted between 30% to 60% of recoverable damages to be a "tangible monetary benefit" for the class members); *Alleyne v. Time Moving & Storage Inc.*, 264 F.R.D. 41, 57-58 (E.D.N.Y. 2010) (settlement fund representing approximately 13% to 17% of maximum recovery reasonable).

### 6.    The Parties Engaged in Sufficient Discovery.

In evaluating this factor, courts must consider whether "the parties and the court have adequate information in order to evaluate [their] relative positions," and "should take account not only of court-refereed discovery but also informal discovery in which parties engaged both before and after litigation commenced."[73]  Although the parties did not engage in formal discovery in the state action, Plaintiffs in the action before this Court *did* engage in extensive discovery.  Plaintiffs propounded dozens of discovery requests and exchanged thousands of documents.[74]  Plaintiffs deposed five witnesses and Covelli deposed nine Opt-in Plaintiffs.[75]  The parties brought discovery disputes before the Court on numerous occasions and regularly met and conferred to informally resolve issues.[76]  Plaintiffs also served two third-party subpoenas and litigated their propriety.[77]  Because the Ohio Wage Act claim largely tracks the FLSA claim, this discovery provided the parties with substantial information to evaluate the class claims.

As a result of the discovery conducted in this case, Plaintiffs in the state case have a robust record with which to assess the strengths and weaknesses of their claim.  For these reasons, this factor should weigh in favor of preliminary approval.

### 7.    Experienced Counsel Recommend Approval.

The recommendation in this case by experienced and highly-regarded counsel for both parties should guide the Court to grant preliminary approval.  "The recommendation of [c]lass

---

[73]    *Wright v. Premier Courier, Inc.*, No. 16 Civ. 420, 2018 WL 3966253, at *4 (S.D. Ohio Aug. 17, 2018) (internal quotation marks and citations omitted); *accord Levell v. Monsanto Research Corp.*, 191 F.R.D. 543, 556-57 (S.D. Ohio 2000).

[74]    Swartz Decl. ¶ 27.

[75]    Swartz Decl. ¶ 27.

[76]    Swartz Decl. ¶¶ 30-31; *see also supra* Part I.C.

[77]    *See supra* Part I.B.

[c]ounsel . . . that the Court should approve the Settlement is entitled to deference."[78] The parties in this case were represented by experienced employment attorneys who recommend this Settlement as a favorable resolution for the Class. Plaintiffs' Counsel – including attorneys from multiple law firms that exclusively represents employees in employment matters – have extensive experience litigating complex employment class actions, particularly in wage and hour cases.[79] In this case, the parties engaged in sufficient discovery and negotiations to make a well-informed settlement decision.[80] Moreover, counsel negotiated at arm's length with the aid of experienced mediators.[81]

### 8. The Reaction of the Class is a Neutral Factor.

After notice issues and the Class Members have had an opportunity to be heard, the Court can more fully analyze this factor. The Plaintiffs fully support the Settlement and Plaintiffs' Counsel anticipates that the Ohio Class will be satisfied with its favorable terms, particularly in light of the fact that the award in this case is substantial.[82]

### 9. Approval is in the Public Interest.

The public interest supports approval. First, there is an established policy favoring resolution of litigation through settlement.[83] Second, this particular settlement is favorable and provides compensation to hundreds of low-wage Ohio workers. Finally, the Settlement

---

[78] *Wright*, 2018 WL 3966253, at *5.

[79] Swartz Decl. ¶¶ 7-8, 12-17; Declaration of Gregg I. Shavitz ("Shavitz Decl.") ¶¶ 35-46; Declaration of Drew Legando ("Legando Decl.") ¶¶ 2-4; Declaration of Randall S. Newman ("Newman Decl.") ¶¶ 3, 9; Declaration of Daniel R. Karon ("Karon Decl.") ¶¶ 2, 4-5.

[80] *Levell*, 191 F.R.D. at 557 (deferring to counsel where parties engaged in "informal discovery and extensive negotiations").

[81] *Bert v. AK Steel Corp.*, No. 02 Civ. 467, 2008 WL 4693747, at *2 (S.D. Ohio Oct. 23, 2008) ("[P]articipation of an independent mediator in settlement negotiations virtually insures that the negotiations were conducted at arm's length and without collusion . . . .").

[82] *See supra* Part I.A.5.

[83] *See Robinson*, 566 F.3d at 648 (noting that public policy "strongly favors" settlement).

16

conserves judicial resources by preventing what would likely be a protracted litigation.[84]

### 10. Defendant's Ability to Withstand a Judgment is Neutral.

Covelli's ability to withstand a judgment should not be a determining factor in this case. Although Covelli could, as a financial matter, likely pay a greater judgment, its ability to do so, "standing alone, does not suggest that the settlement is unfair."[85] This factor is more than outweighed by the benefits discussed above.

### B. Conditional Certification of the Class is Appropriate.

Certification of the Class is governed by Rule 23 of the Federal Rules of Civil Procedure. Rule 23(a) requires that any class meet the following requirements: numerosity, commonality, typicality, and adequacy.[86] Additionally, when seeking to certify a class under Rule 23(b), the plaintiff must show that questions of law or fact common to the class predominate over questions affecting only individual members, and that a class action is superior to other available methods for adjudicating the controversy.[87] Here, Plaintiffs seek certification of the following class:

> All Assistant Managers who work or have worked for Defendant at any time from January 9, 2016 until the date of final judgment in this action, who Defendant classified as exempt from overtime.[88]

For the reasons set forth below, the Class meets all of the requirements of Rule 23(a) and Rule 23(b)(3). Covelli consents to the certification motion for settlement purposes.[89]

---

[84]     *See Ehrheart v. Verizon Wireless*, 609 F.3d 590, 595 (3d Cir. 2010) (noting "conservation of judicial resources" is a benefit of settlements).

[85]     *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 178 n.9.

[86]     Fed. R. Civ. P. 23(a); *see also Combs v. TrueGreen Ltd. P'ship*, No. 08 Civ. 489, 2010 WL 11636094, at *2-3 (S.D. Ohio Sept. 2, 2010) (discussing Rule 23(a) factors for conditional certification of Rule 23 class in preliminary settlement approval order in FLSA case); *Stanley*, 2018 WL 2268138, at *1-2 (same).

[87]     Fed. R. Civ. P. 23(b)(3).

[88]     Ex. B (Ohio Complaint) ¶ 49.

[89]     *See* Settlement Agreement ¶ 2.0.

### 1.   Numerosity

Numerosity is satisfied when the class is "so numerous that joinder of all members is impracticable."[90]  Although no "strict numerical test" governs the analysis for determining impracticability of joinder,[91] numerosity is generally satisfied where a putative class has forty or more members.[92]  Plaintiffs easily satisfy the numerosity requirement because there are approximately 614 Class Members, approximately 478 of whom are not also FLSA Collective Members.[93]  Joinder of all eligible members – or even just a portion – would be impracticable.

### 2.   Commonality

The Class also satisfies the commonality requirement of Rule 23(a)(2), the purpose of which is to test "whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence."[94]  "To demonstrate commonality, the plaintiffs must show that class members have suffered the same injury."[95]  This factor is satisfied when "a common legal question" applies to the entire class and "can be resolved most efficiently in the context of a class action."[96]

---

[90]     Fed. R. Civ. P. 23(a)(1).
[91]     *Stanley*, 2018 WL 2928028, at *2 (quoting *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996)); *accord Castillo v. Morales, Inc.*, 302 F.R.D. 480, 487 (S.D. Ohio 2014).
[92]     *Snelling v. ATC Healthcare Servs. Inc.*, No. 11 Civ. 983, 2012 WL 6042839, at *5 (S.D. Ohio Dec. 4, 2012).
[93]     Swartz Decl. ¶ 47; *see also Stanley*, 2018 WL 2268138, at *2 (finding that the numerosity requirement was satisfied by a class of 106 individuals); *Rotuna*, 2010 WL 2490989, at *3 (same for estimated class of 1,800); *Dillworth v. Case Farms Processing, Inc.*, No. 08 Civ. 1694, 2010 WL 776933, at *3 (N.D. Ohio Mar. 8, 2010) (same for estimated classes of 1,000 to 2,000 members, respectively).
[94]     *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982).
[95]     *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 852 (6th Cir. 2013) (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349-50 (2011)).
[96]     *Dillworth*, 2010 WL 776933, at *3; *see also In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d at 852 ("This inquiry focuses on whether a class action will generate common answers that are likely to drive resolution of the lawsuit.").

18

Here, the central factual and legal issues are common to the Class and capable of class-wide resolution. All Class Members claim that they were improperly classified by Covelli as exempt from the FLSA's overtime provisions, worked overtime, and were denied overtime wages.[97] The common legal issues in this case require no individualized inquiry, and courts in this Circuit have found similar claims to meet Rule 23's commonality requirement.[98]

### 3. Typicality

The claims of Plaintiff Kis are typical of those of the Class Members. Although Rule 23(a)(3) requires the named plaintiff's claims to be typical of the class members' claims, the claims need not be factually identical.[99] Typicality is satisfied where the named plaintiff's claim "arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory."[100]

Typicality is easily satisfied here. Plaintiff Kis's claims arise from the same factual and legal circumstances that form the basis of the Class Members' claims. Covelli implemented a policy exempting AMs from overtime wages, required AMs to work overtime, and failed to pay AMs overtime wages. This policy was consistent at all Covelli locations. Further, all AMs performed primarily manual duties. "Under these allegations, there are enough common elements of fact and law with respect to the course of conduct at issue to satisfy Rule 23(a)'s

---

[97]     Swartz Decl. ¶ 18.

[98]     *Kritzer v. Safelite Sols., LLC*, No. 10 Civ. 729, 2012 WL 1945144, at *3 (S.D. Ohio May 30, 2012) (finding commonality was satisfied where "[t]he same legal question is at play with all members of the class"); *Combs*, 2010 WL 11636094, at *2 (finding common question "whether Defendants properly paid wages and overtime by their application of the Fluctuating Work Week Method of overtime payment" satisfies Rule 23(a)(2)).

[99]     *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 525 n.31 (6th Cir. 1976); *McDonald v. Franklin Cty.*, 306 F.R.D. 548, 557 (S.D. Ohio 2015). Further, typicality is not destroyed where "an individualized review of each claim brought by the various members will have to be made to determine the amount of recovery." *Rotuna*, 2010 WL 2490989, at *4.

[100]    *In re Am. Med. Sys., Inc.*, 75 F.3d at 1082.

typicality requirement."[101]

### 4. Adequacy

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class."[102]  To satisfy this standard, a representative: 1) "must have common interests with unnamed members of the class," and 2) "it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel."[103]  The adequacy and typicality requirements overlap "because in the absence of typical claims, the class representative has no incentives to pursue the claims of the other class members."[104]

Here, Plaintiff Kis has common interests with the Class Members for the same reasons that she satisfies the typicality standard: her claims arise from the same factual and legal circumstances as Class Members' claims.  Additionally, Plaintiffs have vigorously prosecuted the interests of the class by obtaining a highly favorable settlement.  Finally, Plaintiffs are represented by counsel who have zealously and competently represented the Class Members' interests and have extensive experience litigating complex employment class actions, including FLSA class and collective actions.[105]  The adequacy requirement is therefore satisfied.

### 5. The Class Meets the Requirements of Rule 23(b)(3).

The Court should certify the Class under Rule 23(b)(3) because (1) "questions of law or fact common to class members predominate over any questions affecting only individual members," and (2) "a class action is superior to other available methods for fairly and efficiently

---

[101]  *Kritzer*, 2012 WL 1945144, at *3.
[102]  Fed. R. Civ. P. 23(a)(4).
[103]  *In re Inter-Op. Litig.*, 204 F.R.D. at 342; *accord Senter*, 532 F.2d at 525.
[104]  *In re Am. Med. Sys., Inc.*, 75 F.3d at 1083.
[105]  Swartz Decl. ¶¶ 7-8, 12-17; Shavitz Decl. ¶¶ 35-46; Legando Decl. ¶¶ 2-4; Newman Decl. ¶¶ 3, 9; Karon Decl. ¶¶ 2, 4-5.

adjudicating the controversy."[106]

### i.    Common Questions Predominate.

Common questions predominate in this case.  "The 'predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'"[107]  When determining whether common issues "predominate" over questions affecting only individual members, "[a]n individual question is one where 'members of a proposed class will need to present evidence that varies from member to member,' while a common question is one where 'the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof.'"[108]  "When 'one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses . . . .'"[109]

Here, the central factual and legal question – whether Covelli misclassified its AMs, thus depriving them of earned overtime wages – is common, can be proven with common evidence and legal arguments, and predominates over any possible individual variations that may exist

---

[106]    Fed. R. Civ. P. 23(b)(3).

[107]    *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997)).

[108]    *Id.* (second alteration in original) (quoting 2 William B. Rubenstein et al., *Newberg on Class Actions* § 4:50 (5th ed. 2012)); *see also Rotuna*, 2010 WL 2490989, at *4 (noting that this factor "is satisfied where the questions common to the class are 'at the heart of the litigation'").

[109]    *Tyson Foods, Inc.*, 136 S. Ct. at 1045 (citation omitted); *see also Martin v. Behr Dayton Thermal Prods. LLC*, 896 F.3d 405, 415 (6th Cir. 2018) ("*Tyson* instructs that certification may remain 'proper' even if 'important matters' such as actual injury, causation, and damages will have to be tried separately."); *Pund v. City of Bedford*, 339 F. Supp. 3d 701, 722 (N.D. Ohio 2018) (certifying Rule 23(b)(3) subclasses despite "significant factual differences" in each class member's case").

within the Class.[110]

### ii. A Class Action is Superior to Individual Actions.

Rule 23(b)(3) also requires that "a class action [be] the superior method for fair and efficient adjudication."[111] Rule 23(b)(3) sets forth a non-exclusive list of factors relevant to superiority, including the class members' interests in individually controlling separate actions; whether individual class members wish to bring, or have already brought, individual actions; and the desirability of concentrating the claims in the particular forum.[112]

The class action device is superior in this case as "the cost of [individual] litigation would dwarf any potential recovery."[113] Resolving the same claims of hundreds of Covelli AMs in the same class action will also achieve economies of scale, conserve judicial resources, and avoid the waste and delay of repetitive proceedings of similar issues and claims.[114] In addition, Plaintiffs are not aware of any individual suits alleging the same violations.

### C. Plaintiffs' Counsel Should be Appointed as Class Counsel.

Rule 23(g) governs the appointment of class counsel and sets forth four criteria to evaluate the adequacy of counsel: (1) "the work counsel has done in identifying or investigating potential claims in the action"; (2) "counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action"; (3) "counsel's knowledge of the applicable law"; and (4) "the resources that counsel will commit to representing the class."[115]

---

[110]   *See Combs*, 2010 WL 11636094, at *3 (holding that whether the Defendants engaged in improper pay practices "predominates over any questions affecting individual Class Members").
[111]   *Pipefitters Local 636 Ins. Fund v. BCBS of Mich.*, 654 F.3d 618, 630 (6th Cir. 2011).
[112]   Fed. R. Civ. P. 23(b)(3). Rule 23(b)(3) also lists "manageability of the class action," but the Supreme Court held that manageability need not be considered when certifying a class for settlement purposes. *Amchem Prods.*, 521 U.S. at 620.
[113]   *In re Whirlpool Litig.*, 722 F.3d at 861.
[114]   *See In re Inter-Op Litig.*, 204 F.R.D. at 348; *Rotuna*, 2010 WL 2490989, at *4.
[115]   Fed. R. Civ. P. 23(g)(1)(A).

Plaintiffs' Counsel meet these criteria.  They have done substantial work identifying, investigating, prosecuting, and settling the class claims at issue here.[116]  They have substantial experience prosecuting and settling wage and hour class action lawsuits.[117]  Consequently, courts have repeatedly appointed Plaintiffs' Counsel as class counsel in employment actions.[118]

### D.    Plaintiffs' Notice Plan and Award Distribution Process are Appropriate.

The Court should approve the proposed Notices and reminder postcard.[119]  Rule 23 requires the notice process to be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."[120] The proposed Notices satisfy due process and Rule 23, as they describe clearly and in detail the nature of the action, the class definition and claims, the Settlement's relief, how class members can file claim forms to receive payments, how attorneys' fees will be awarded, that a Class Member may appear and object to the settlement or request to be excluded, how and when to object or opt out, and that the judgment will bind class members who do not opt out.[121] Additionally, the parties have met and conferred and agreed on the form of the notices, which are based upon model notices issued by the Federal Judicial Center.[122]

---

[116]    Swartz Decl. ¶ 19-39; Shavitz Decl. ¶¶ 4-30.

[117]    Swartz Decl. ¶¶ 7-8, 12-17; Shavitz Decl. ¶¶ 35-46; Legando Decl. ¶¶ 2-4; Newman Decl. ¶¶ 3, 9; Karon Decl. ¶¶ 2, 4-5.

[118]    Swartz Decl. ¶¶ 8, 17; Shavitz Decl. ¶ 44; Legando Decl. ¶ 4; Newman Decl. ¶ 9; Karon Decl. ¶¶ 4-5.  *See also, e.g.*, *Perez v. Allstate Ins. Co.*, No. 11 Civ. 1812, 2014 WL 4635745, at *24-25 (E.D.N.Y. Sept. 16, 2014) (appointing O&G as class counsel).

[119]    Settlement Agreement Ex. A (Notice to FLSA Collective Members), Ex. B (Notice to Class Members), Ex. C (Notice to FLSA Collective Members who are also Class Members), Ex G (Reminder Postcard).

[120]    Fed. R. Civ. P. 23(c)(2)(B).

[121]    Fed. R. Civ. P. 23(c)(2)(B), (e)(1); *see generally* Settlement Agreement Ex. B (Notice to Class Members); Settlement Agreement Ex. C (Notice to FLSA Collective Members who are also Class Members).

[122]    Fed. Jud. Ctr. Model Notice, https://www.fjc.gov/sites/default/files/2016/ClaAct11.pdf (last visited June 19, 2019).

## II.   Final Approval of the Settlement as to the FLSA Collective is Appropriate.

In the Sixth Circuit, and throughout the country, a one-step approval process is typical in FLSA settlements.[123]  Unlike a Rule 23 class action, collective actions under Section 216(b) of the FLSA require workers to affirmatively opt in to the litigation.  Because under the FLSA, "parties may elect to opt in but a failure to do so does not prevent them from bringing their own suits at a later date," FLSA collective actions do not implicate the same due process concerns as Rule 23 actions.[124]

Plaintiffs request that the Court approve the FLSA collective action portion of the settlement.  By approving the settlement as to the FLSA collective now, notice of settlement may issue and Covelli can send the settlement checks to Collective Members sooner than the final approval stage, ensuring that workers whose pay is already long overdue receive the most expeditious relief available.  As set forth below, the settlement is fair and the notice of settlement and award distribution process are appropriate.

### A.   The Settlement is Fair as to the FLSA Collective Members.

Courts must approve FLSA settlements reached as a result of contested litigation.[125]
Courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the

---

[123]   *See*, *e.g.*, *Edwards v. City of Mansfield*, No. 15 Civ. 959, 2016 WL 2853619, at *3-4 (N.D. Ohio May 16, 2016); *Bradford v. Legacy Health Servs.*, No. 13 Civ. 218, 2014 WL 7185453, at *2 (N.D. Ohio Dec. 16, 2014); *Schneider v. Goodyear Tire & Rubber Co.*, No. 13 Civ. 2741, 2014 WL 2579637, at *2-3 (N.D. Ohio June 9, 2014); *Prena v. BMO Fin. Corp.*, No. 15 Civ. 9175, 2015 WL 2344949, at *1 (N.D. Ill. May 15, 2015); *Bravo v. 57th Rest. Assocs. LLC*, No. 14 Civ. 8492, 2015 WL 1283659, at *1 (S.D.N.Y. Apr. 9, 2015); *Bozak v. Fedex Ground Package Sys., Inc.*, No. 11 Civ. 738, 2014 WL 3778211, at *2 (D. Conn. July 31, 2014); *Powell v. Lakeside Behavioral Healthcare, Inc.*, No. 11 Civ. 719, 2011 WL 5855516, at *1 (M.D. Fla. Nov. 22, 2011).
[124]   *McKenna v. Champion Int'l Corp.*, 747 F.2d 1211, 1213 (8th Cir. 1984), *abrogated on other grounds by Hoffmann-LaRoche Inc. v. Sperling*, 493 U.S. 165 (1989).
[125]   *See Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352-54 (11th Cir. 1982).

fairness of the settlement.[126]  "The existence of a question as to the plaintiffs' entitlement to compensation under the FLSA serves as a guarantee that the parties have not manipulated the settlement process to permit the employer to avoid its obligations under the FLSA."[127]  Thus, the Court must first determine that a bona fide dispute existed between the parties,[128] and then determine whether the settlement is fair and reasonable in light of the following factors: the risk of fraud or collusion; the complexity, expense, and likely duration of the litigation; the amount of discovery completed; the likelihood of success on the merits; and the public interest in settlement.[129]  If the proposed settlement reflects a reasonable compromise over contested issues, it should be approved.[130]

### 1. A Bona Fide Dispute Exists between the Parties.

This litigation is the result of a bona fide dispute.  The parties dispute nearly all aspects of Plaintiffs' claims, particularly whether AMs employed by Covelli were properly classified as exempt from overtime laws.[131]  Throughout the litigation, the parties vigorously disputed the nature of AMs' job duties.[132]  The parties also disagreed about whether the fluctuating workweek method of calculating overtime wages should apply, whether the trial should be bifurcated, which party should put on her or its case first, and the propriety of introducing common or

---

[126]     *See id.* at 1353-54; *Rotuna*, 2010 WL 2490989, at *5.

[127]     *Dillworth*, 2010 WL 776933, at *5; *see also Rotuna*, 2010 WL 2490989, at *5 (emphasizing that the court must ensure that the parties are not "negotiating around the clear FLSA requirements of compensation for all hours worked, minimum wages . . . and overtime.").

[128]     *Crawford v. Lexington-Fayette Urban Cty. Gov't*, No. 06 Civ. 299, 2008 WL 4724499, at *3 (E.D. Ky. Oct. 23, 2008); *Bradford*, 2014 WL 7185453, at *2.

[129]     *Rotuna*, 2010 WL 2490989, at *5; *Bradford*, 2014 WL 7185453, at *2; *Schneider*, 2014 WL 2579637, at *2; *Crawford*, 2008 WL 4724499, at *3.

[130]     *See Lynn's Food Stores*, 679 F.2d at 1354.

[131]     Swartz Decl. ¶ 50.

[132]     *Id.*

25

representative evidence to prove Plaintiffs' case.[133]  The parties' "divergent views of the facts and the law present bona fide disputes that, had the parties not reached settlement, would have necessitated resolution by the Court and/or a jury."[134]

## 2.  The FLSA Settlement is Fair and Reasonable.

The Court should approve the FLSA settlement because it is also fair and reasonable.  As to the first factor, there is no risk of fraud or collusion.  As described above, the parties litigated the case for more than a year, filed numerous substantive motions, and engaged in extensive discovery.[135]  Additionally, the parties met four times with mediators over the course of the litigation, which highlights both the parties' efforts to resolve the matter at arms' length and the protracted nature of the dispute.  "The participation of an independent mediator in settlement negotiations virtually insures that the negotiations were conducted at arm's length and without collusion between the parties."[136]  For these reasons, this factor weighs in favor of approval.

Second, the parties engaged in rigorous discovery.  As described above, Plaintiffs propounded more than one hundred discovery requests and interrogatories, exchanged thousands of documents with Covelli, deposed numerous witnesses, and litigated several discovery disputes.[137]  As a result of this discovery, the factual issues were well-developed and the parties

---

[133]    ECF No. 171 (Covelli's Response to Plaintiffs' Proposed Trial Plan).
[134]    *Bradford*, 2014 WL 7185453, at *3; *see also Sharier v. Top of the Viaduct, LLC*, No. 16 Civ. 343, 2017 WL 961029, at *2 (N.D. Ohio Mar. 13, 2017); *Hedglin v. Maxim Healthcare Servs., Inc.*, No. 15 Civ. 2614, 2016 WL 6248317, at *1 (N.D. Ohio Oct. 26, 2016); *Schneider*, 2014 WL 2579637, at *2; *Combs*, 2010 WL 11636094, at *5-6; *Rotuna*, 2010 WL 2490989, at *5.
[135]    Swartz Decl. ¶¶ 20-35; *see also Crawford*, 2008 WL 4724499, at *6 (finding no risk of fraud or collusion where parties engaged in two years of active litigation including motions practice and discovery); *Schneider*, 2014 WL 2579637, at *2 (finding no risk of fraud where the settlement was the result of Court-supervised mediation).
[136]    *Castillo*, 2015 WL 13021899, at *4 (quoting *Bert*, 2008 WL 4693747, at *2).
[137]    Swartz Decl. ¶ 27; *see also supra* Part I.C.

had a robust record from which to evaluate their positions. Courts in this Circuit have approved settlement agreements in cases in which the parties engaged in similar amounts of discovery and, as such, this factor weighs in favor of approval.[138]

Third, the case was complex. As the Supreme Court has recognized, "FLSA claims typically involve complex mixed questions of fact and law. . . . [that] must be resolved in light of volumes of legislative history and over four decades of legal interpretation and administrative rulings."[139] Resolution of the various factual disputes would have likely required additional depositions, more written discovery, and extensive motions practice.[140] The parties' favorable resolution of this complex case weighs in favor of approval of the Settlement.

Consideration of the possible expense and duration of the litigation weighs in favor of approving the Settlement as to FLSA Collective Members. If the parties had not successfully reached a settlement principle when they did, the case would have continued in discovery until the end of this month and gone to trial in late July.[141] Either of the parties may have appealed following trial, which would extend the litigation by months or years. The expense associated with the continued litigation would be substantial. By settling, the parties have avoided significant additional expenses, a consideration which weighs in favor of approval.

The fourth factor, likelihood of success on the merits, also weighs in favor of approval. Both parties undertook significant risk in litigating the case to this advanced stage and there was

---

[138]    *See, e.g.*, *Castillo*, 2015 WL 13021899, at *1 (noting that the parties engaged in "extensive" discovery); *Dillworth*, 2010 WL 776933, at *2 (same).
[139]    *Barrentine v. Ark.-Best Freight Sys., Inc.*, 450 U.S. 728, 743 (1981); *see also Gentrup*, 2011 WL 2532922, at *4 (noting that wage and hour cases are "frequently complex matters").
[140]    Swartz Decl. ¶ 51.
[141]    ECF Minute Entry Dated April 15, 2019.

no guarantee that Plaintiffs would prevail at trial.[142] In light of this risk, the resolution reached by the parties – which will result in awards to each FLSA Collective Member of up to 83% of estimated owed overtime wages, including liquidated damages – is favorable.[143] Moreover, "the certainty and finality that comes with settlement also weighs in favor of a ruling approving the agreement."[144]

With respect to the final factor, "[i]f the settlement reflects a reasonable compromise over issues actually disputed, such as FLSA coverage or computation of back wages, a court may approve a settlement to 'promote the policy of encouraging settlement of litigation.'"[145] In sum, the Settlement Agreement as to the FLSA Collective constitutes a fair and reasonable resolution of a bona fide dispute between the parties and should be approved.

### B. The Notice of Settlement and Award Distribution Process are Appropriate.

Plaintiffs request that the Court also approve the proposed Notice of Proposed Settlement of Class and Collective Action Lawsuit and Fairness Hearing and proposed Notice of Collective Action Settlement.[146] The proposed Notices sufficiently inform the FLSA Collective Members – all of whom have already affirmatively opted in to the action – of the terms of the settlement, including the allocation formula, opt-out rights, and scope of the release.[147] By approving the settlement as to the FLSA Collective now and allowing for notice to be issued promptly, the

---

[142]    *Castillo*, 2015 WL 13021899, at *5 (discussing legal and factual issues in the case that made success at trial uncertain); *Rotuna*, 2010 WL 2490989, at *6.

[143]    *Dillworth*, 2010 WL 776933, at *6; *Castillo*, 2015 WL 13021899, at *5.

[144]    *Dillworth*, 2010 WL 776933, at *6.

[145]    *Crawford*, 2008 WL 4724499, at *9 (quoting *Lynn's Food Stores*, 769 F.2d at 1353).

[146]    Settlement Agreement Ex. A (Notice to FLSA Collective Members); Settlement Agreement Ex. C (Notice to FLSA Collective Members who are also Class Members).

[147]    *See, e.g.*, *Gentrup*, 2011 WL 2532922, at *3 (approving notices that "fairly and adequately describe the terms of the Settlement including the release of claims and the form and manner of payments").

Court ensures that FLSA Collective Members receive compensation as soon as possible.

<u>**CONCLUSION**</u>

For the foregoing reasons, Plaintiff respectfully requests that the Court grant this Motion

and enter the Proposed Order.

Dated: June 28, 2019                                       Respectfully submitted,

                                                          By: *s/ Drew Legando*
                                                          Drew Legando (0084209)
                                                          **LANDSKRONER GRIECO MERRIMAN LLC**
                                                          1360 West 9th Street, Suite 200
                                                          Cleveland, Ohio 44113
                                                          T. (216) 522-9000
                                                          F. (216) 522-9007
                                                          E. drew@lgmlegal.com

                                                          **OUTTEN & GOLDEN LLP**
                                                          Justin M. Swartz*
                                                          Darnley D. Stewart*
                                                          Deirdre A. Aaron*
                                                          685 Third Ave., 25th floor
                                                          New York, New York 10017
                                                          T. (212) 245-1000
                                                          F. (646) 509-2060
                                                          E. jms@outtengolden.com
                                                          E. dstewart@outtengolden.com
                                                          E. daaron@outtengolden.com

                                                          **OUTTEN & GOLDEN LLP**
                                                          Sally J. Abrahamson*
                                                          Lucy Bansal*
                                                          Hannah Cole-Chu**
                                                          601 Massachusetts Ave NW, Suite 200W
                                                          Washington, DC 20001
                                                          T. (202) 847-4400
                                                          F. (202) 847-4410
                                                          E. sabrahamson@outtengolden.com
                                                          E. lbansal@outtengolden.com
                                                          E. hcolechu@outtengolden.com
                                                          **SHAVITZ LAW GROUP, P.A.**
                                                          Gregg Shavitz*
                                                          Logan A. Pardell*
                                                          951 Yamato Road, Suite 285

Boca Raton, Florida 33431
T. (561) 447-8888
F. (561) 447-8831
E. gshavitz@shavitzlaw.com
E: lpardell@shavitzlaw.com

**SHAVITZ LAW GROUP, P.A.**
Michael Palitz*
830 Third Avenue, 5th Floor
New York, New York 10022
T. (800) 616-4000
E. mpalitz@shavitzlaw.com

**KARON LLC**
Daniel R. Karon (0069304)
Beau D. Hollowell (0080704)
700 W. St. Clair Ave., Suite 200
Cleveland, OH 44113
T. (216) 622-1851
F. (216) 241-8175
E. dkaron@karonllc.com
bhollowell@karonllc.com

**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**
Randall S. Newman*
Robert Abrams*
Correy A. Kamin*
270 Madison Avenue, 10th Fl.
New York, NY 10016
T. (212) 545-4600
F. (212) 686-0114
E. newman@whafh.com
abrams@whafh.com
kamin@whafh.com

*Attorneys for Plaintiffs and the Collective*

*admitted *pro hac vice*
**admitted *pro hac vice.*  Admitted to practice in Maryland and the U.S. District Court for the District of Maryland.  Not yet admitted to practice in the District of Columbia.  Practicing under the supervision of a member of the D.C. bar.