UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

------------------------------------------------------

ERIN KIS, *on behalf of herself and all others similarly situated, et al.*,

        Plaintiffs,

vs.

COVELLI ENTERPRISES, INC.,

        Defendant.

------------------------------------------------------

Case Nos. 4:18-cv-54
           4:18-cv-434

OPINION & ORDER
[Resolving Doc. 212]

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

In this Fair Labor Standards Act ("FLSA") collective action, nearly five hundred current and former Panera Bread assistant managers seek unpaid overtime wages from Covelli Enterprises, Inc. The parties now propose a settlement.[1]

Under the proposed settlement, Defendant Covelli will pay up to $3,725,000 to settle the collective action's claims.[2] The parties also ask the Court to conditionally certify a related Ohio wage law class action for settlement purposes. Covelli will pay up to $900,000 to settle the class action's claims.[3]

Plaintiffs ask the Court to: (i) approve the collective action settlement, (ii) conditionally certify the class for settlement, (iii) preliminarily approve the class settlement, (iv) appoint Plaintiffs' counsel as class counsel, and (v) issue the proposed class and collective action notices.[4] For the following reasons, the Court **GRANTS** Plaintiffs' motion.

## I. The FLSA Collective Action Settlement

In this circuit, whether an FLSA collective action settlement even requires court

---

[1] Doc. 212.
[2] Doc. 212-7 at 11.
[3] *Id.*
[4] Doc. 212. Defendant does not oppose.

approval is an open question, and the other circuits are split.[5] However, this Court has previously required it.[6] This comports with the FLSA's animating assumption: unequal bargaining power between employers and employees requires government supervision.[7]

When deciding whether to approve the settlement, the Court considers: (i) the likelihood of success on the merits, (ii) the complexity, expense, and duration of litigation, (iii) the amount of discovery completed, (iv) the risk of fraud or collusion, and (v) the public interest.[8] Taken together, the factors favor approval.

The likelihood of success on the merits is the most important factor,[9] and is used to ensure that the settlement's value fairly reflects the case's strength.[10] Here, Plaintiffs would likely succeed. The primary question in this case is whether Defendant properly classified Plaintiffs as overtime-exempt executives. Plaintiffs have submitted dozens of affidavits showing that their jobs primarily involved manual labor and customer service,[11] placing them outside the exemption.[12] Additionally, assistant manager training uniformity and corporate micromanagement makes this job duty evidence broadly applicable to all Plaintiffs.[13]

Under the settlement, Plaintiff will receive 83% of the estimated total potential

---

[5] *Compare Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015) (requiring court approval), *Seminiano v. Xyris Ent., Inc.*, 602 F. App'x 682, 683 (9th Cir. 2015) (same), *O'Connor v. United States*, 308 F.3d 1233 (Fed. Cir. 2002) (same), *Walton v. United Consumers Club, Inc.*, 786 F.2d 303, 306 (7th Cir. 1986) (same), *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982) (same), *and with Martin v. Spring Break '83 Prod., L.L.C.*, 688 F.3d 247, 256 (5th Cir. 2012) (not requiring court approval). *See also Barbee v. Big River Steel, LLC*, 927 F.3d 1024 (8th Cir. 2019) (recognizing split).
[6] *Carr v. Bob Evans Farms, Inc.*, No. 1:17-CV-1875, 2018 WL 7508650 (N.D. Ohio July 27, 2018).
[7] *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706 (1945).
[8] E.g., *Tater v. We Build Apps LLC*, No. 1:18-cv-01221, 2019 WL 1458155, at *2 (N.D. Ohio April 2, 2019). *See Does 1–2 v. Déjà Vu Services, Inc.*, 925 F.3d 886 (6th Cir. 2019) (applying these factors and two others in approving a joint FLSA collective action and class action settlement).
[9] *Déjà Vu Services*, 925 F.3d at 895.
[10] *Id.*
[11] Doc. 29-4 at 3; Doc. 29-5 at 3–4; Doc. 29-6 at 3; Doc. 29-7 at 3–4; Doc. 29-8 at 4; Doc. 130-7 at 12, 15, 22, 26, 35, 52, 69; Doc. 130-8 at 3, 7–8, 19, 25, 40, 48, 52, 60, 64; Doc. 130-9 at 3–4, 7, 32, 43, 49, 52, 59, 65, 76.
[12] The executive exemption requires an employee's primary duty to be management. 29 C.F.R. § 541.100(a).
[13] Doc. 125 at 11; Doc. 130-9 at 66.

Case Nos. 4:18-cv-54
Gwin, J.

award.[14] This properly reflects the case's strength while accounting for the unpredictability of jury trials and the challenges in presenting a case through representative evidence.

The Court next considers the complexity, expense, and duration of the litigation (the more complex the case, the more settlement is favored). One on hand, the proposed settlement comes on the eve of trial. Thus, most of the time and expense to be spent on this case has already been spent. However, the parties would still face two complex jury trials (damages and liability) involving dozens of witnesses and a likely appeal.[15] This factor is thus mixed.

Third, the Court examines the amount of discovery completed to ensure the settlement is well-informed.[16] The parties here conducted extensive discovery, deposing fourteen witnesses, issuing hundreds of document requests and interrogatories, serving third-party subpoenas, and attending seven discovery conferences.[17]

Fourth, there is little risk that fraud or collusion produced the settlement. The parties vigorously litigated this case for more than a year, fighting over certification, discovery, and the trial plan.[18] The record is littered with failed settlement attempts.[19] And, importantly, they reached this settlement through a mediator.[20]

Finally, the Court considers the public interest, which is mixed. On one hand, the

---

[14] Doc. 212-1 at 28.
[15] *See* Docs. 161, 171, 188.
[16] *Olden v. Gardner*, 294 F. App'x 210, 218 (6th Cir. 2008).
[17] Doc. 212-2 at 9; Doc. 157; Doc. 183.
[18] *Gascho v. Global Fitness Holdings, LLC*, 822 F.3d 269, 277 (6th Cir. 2016) ("The parties' two-and-a-half years of litigation, extensive discovery, ongoing settlement negotiations, and formal mediation session all weighed against the possibility of fraud or collusion.").
[19] *E.g.,* Doc. 44 (referring the parties to unsuccessful mediation).
[20] *Hainey v. Parrott*, 617 F. Supp. 2d 668, 673 (S.D. Ohio 2007) ("The participation of an independent mediator in the settlement negotiations virtually insures [sic] that the negotiations were conducted at arm's length and without collusion.").

public interest favors settling large complex actions to preserve judicial resources.[21]

However, the public interest also favors enforcing the FLSA.[22] Conspicuously absent from the settlement is any requirement that Covelli change its overtime practices.[23]

Considering the factors, the Court approves the collective action settlement.

## II. Conditional Class Action Certification

Plaintiffs ask the Court to conditionally certify a class for settlement composed of:

> All Assistant Managers who work or have worked for Defendant at any time from January 9, 2016 until the date of final judgment in this action, who Defendant classified as exempt from overtime.[24]

For class certification, Plaintiffs must show that: (i) the class is too numerous to proceed through joinder, (ii) there are common questions of law or fact, (iii) the representative parties' claims or defenses are typical of the class, and (iv) the representative parties will adequately protect the class interests.[25] Also, because Plaintiffs seek Rule 23(b)(3) certification, they must show that common questions predominate over individualized questions and class adjudication is superior to other methods.[26]

First, with an estimated 614 members, the class easily clears numerosity.[27]

Next, for common questions of law or fact predominate, the questions subject to generalized proof must outweigh those requiring individualized proof.[28] Here, the Plaintiffs worked the same job, for the same employer, classified under the same overtime exemption. Further, the evidence uncovered in the FLSA collective action indicates that

---

[21] *Déjà Vu Services*, 925 F.3d at 899.
[22] *Id.*
[23] Doc. 212-7.
[24] Doc. 212-1 at 17.
[25] Fed. R. Civ. P. 23(a).
[26] Fed. R. Civ. P. 23(b)(3).
[27] Doc. 212-1 at 18. *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1076 (6th Cir. 1996) ("[T]he Sixth Circuit has previously held that a class of 35 was sufficient to meet the numerosity requirement.").
[28] *Bridging Communities Inc. v. Top Flite Fin. Inc.*, 843 F.3d 1119, 1124 (6th Cir. 2016).

they received the same training and likely had similar job responsibilities.

Also, the representative parties bring the same claims, arising out of the same policy, as the whole class. Typicality is met.[29] Similarly, because the representatives' claims are typical of the class, and because there are no conflicts of interests, they will adequately protect the class's interests.[30]

The Court also considers whether a class action is the superior method of adjudication. In doing so it considers whether the class will promote efficiency, minimize expense, and achieve decisional uniformity between similarly situated persons.[31]

Because Plaintiffs seek certification only for settlement purposes, there will be no difficulty in managing the class.[32] Moreover, there are no alternative methods that could resolve these cases as efficiently, cheaply, or uniformly. Thus, the Court conditionally certifies the sought class for settlement purposes.

### III. Class Counsel

Class counsel must fairly and adequately represent the interests of the class.[33] In considering whom to appoint, the Court must consider: (i) counsel's efforts in identifying and investigating potential claims, (ii) counsel's experiences in handling class actions and similar claims, (iii) counsel's knowledge of the applicable law, and (iv) the resources counsel will commit to the class.[34]

---

[29] *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 561 (6th Cir. 2007) ("A claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of the other class members, and if his or her claims are based on the same legal theory.").

[30] *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 n.5 (2011); *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997).

[31] *See Pipefitters Local 636 Ins. Fund v. Blue Cross Blue Shield of Mich.*, 654 F.3d 618, 630–31 (6th Cir. 2011).

[32] *Amchem Prods., Inc.*, 521 U.S at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial."(internal citation omitted)).

[33] Fed. R. Civ. P. 23(g)(4).

[34] Fed. R. Civ. P. 23(g)(1)(A)(i)–(iv).

Plaintiffs ask the Court to appoint its attorneys as class counsel. These firms have conducted extensive discovery in the FLSA collective action for more than a year, litigating the case to the eve of trial. Because the collective action's claims mirror the proposed class's, the proposed counsel have effectively made substantial efforts in investigating the class's claims. Their involvement in the FLSA collective action also suggests they possess the necessary legal knowledge.

The firms will bring sufficient resources to the representation. Together, they have hundreds of attorneys, sixteen of whom have appeared in this case. Also, they have litigated this case effectively for eighteen months, defending against aggressive decertification efforts and winning discovery disputes.

Finally, even setting aside this case, these firms have substantial class action experience.[35] Accordingly, the Court will appoint Plaintiffs' counsel as class counsel.

## IV. The Class Action Settlement

Plaintiffs also ask the Court to preliminarily approve the proposed class settlement.[36] Much like FLSA collective action settlement, the Court considers: (i) the likelihood of success on the merits, (ii) the complexity, expense, and duration of litigation, (iii) the amount of discovery completed, (iv) the risk of fraud or collusion, (v) the reaction of class counsel, (vi) the reaction of absent class members, and (vii) the public interest.[37]

First, it is difficult to determine the class's likelihood of success. On one hand, the FLSA collective action is likely to succeed, and the class brings the same claims under the same policy. However, Plaintiffs have not yet submitted any

---

[35] Doc. 212-3 at 11; Doc. 212-4 at 2; Doc. 212-5 at 2, 15–30; Doc. 212-6 at 2–3.
[36] Fed. R. Civ. P. 23(e) (requiring court approval of class settlements)
[37] *UAW v. General Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007).

evidence specific to the class. And, the executive exemption is too fact-specific to overly attribute the collective action's strength to the class. Under the settlement, class members would receive 33% of the estimated total potential recovery. Considering the lack of class-specific evidence, but accounting for the strength of the collective action, this factor favors approval.

Second, the Court considers the complexity, expense, and likely duration of the litigation. The class is at the starting line. It would need to survive Covelli's decertification efforts (Covelli agreed not to oppose certification for settlement purposes only) and dispositive motions. And, if the FLSA collective action is any indicator, the class would face another eighteen months of litigation just to get to trial. Further, the fact-specific nature of the exemption inquiry would make the litigation unusually complex and discovery intensive. This factor favors approval.

Third, while the parties have conducted little discovery specific to the class, the collective action's claims and issue mirror the class, and the collective action has completed significant discovery. That discovery should adequately inform the class settlement as well.[38]

Next, for the reasons discussed in approving the collective action settlement, there is little risk of fraud or collusion.

Also, class counsel favors the settlement.[39] It is too early to evaluate absent class members' reactions.

Finally, for the same reasons discussed in the collective action settlement

---

[38] *See Déjà Vu Services*, 925 F.3d at 888 (related discovery conducted in different case may suffice).
[39] Doc. 212-3 at 8; Doc. 212-4 at 1; Doc. 212-5 at 2; Doc. 212-6 at 2. The Court cannot yet evaluate the reaction of absent class members.

context, the public interest is mixed. Taking the factors together, the Court preliminarily approves the class settlement.

## V. Notice

Finally, Plaintiffs ask the Court to approve proposed class and collective certification and settlement notices. The notices must explain: the nature of the action, the class definition, the class claims, issues, and defenses, how a class member may enter an appearance, how a class member can opt into or out of the settlement, and the settlement's binding nature.[40] Plaintiffs' proposed notices satisfy these requirements.[41]

Due process requires that the notice be reasonably calculated to reach interested parties.[42] Plaintiffs plan to send the notices through the postal service and electronic mail, using contact information Covelli retained as the class members' employer suffices.

For the foregoing reasons, the Court **GRANTS** Plaintiffs' motion, **APPROVES** the FLSA collective action settlement, and **CONDITIONALLY CERTIFIES** the class as described. The Court further **PRELIMINARILY APPROVES** the class action settlement, **APPOINTS** Plaintiffs' counsel as class counsel, and **ORDERS** Plaintiffs to issue attached notices in the manner described in their motion.

IT IS SO ORDERED.

Dated: July 26, 2019          *s/     James S. Gwin*
                              JAMES S. GWIN
                              UNITED STATES DISTRICT JUDGE

---

[40] *Déjà Vu Services*, 925 F.3d at 900.
[41] The Court has made minor changes.
[42] *Id.*