```
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
-------------------------------------------------------
ERIN KIS, on behalf of herself and all    :
others similarly situated, et al.,        :    Case Nos. 4:18-cv-54
                                          :              4:18-cv-434
              Plaintiffs,                 :
                                          :
      vs.                                 :    OPINION & ORDER
                                          :    [Resolving Docs. 223, 224, 225]
COVELLI ENTERPRISES, INC.,                :
                                          :
              Defendant.                  :
                                          :
-------------------------------------------------------
```

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

In this Fair Labor Standards Act ("FLSA") collective action, nearly five hundred current and former Panera Bread assistant managers seek unpaid overtime wages from Covelli Enterprises, Inc. Having previously obtained preliminary approval, Plaintiffs now move for class certification and final approval of the settlement, enhancement awards, and attorneys' fees, costs, and expenses.

For the following reasons, the Court **CERTIFIES** the settlement class, **APPROVES** the settlement agreement, and **GRANTS** enhancement awards and attorney fees, costs, and expenses as stated in this order.

## Background

### A. Procedural History

On January 9, 2018, Plaintiff Erin Kis sued Defendant Covelli Enterprises on behalf of herself and other Panera Bread assistant managers.[1] Defendant Covelli Enterprises owns and operates a large number of Panera Bread franchises.[2] In her complaint, Plaintiff Kis

---

[1] Doc. 1. Unless otherwise noted, all docket references are for Case No. 4:18-cv-54.
[2] Doc. 1.

Case No. 4:18-cv-0054
Gwin, J.

alleged that Defendant Covelli Enterprises misclassified their assistant managers as exempt from overtime protections and wrongly failed to pay assistant managers overtime wages.[3]

On June 28, 2019, the parties proposed a class action settlement.[4] On July 26, 2019, the Court conditionally certified the class, and preliminarily approved the class action settlement, class counsel, proposed notices of settlement, and settlement procedure.[5]

On February 5, 2020, Plaintiffs moved for final certification of the class and approval of the settlement and attorneys' fees and costs.[6] The named plaintiffs also sought approval of enhancement awards.[7]

On February 12, 2020, the Court held a fairness hearing.[8]

### B. The Settlement Agreement

The settlement resolves Plaintiffs' FLSA collective action as well as a related Ohio wage law class action.[9] The settlement defines the FLSA collective as all who consented to join the collective and worked as assistant managers for Defendant during the three years before filing their consent.[10] The settlement defines the class members as all collective action members who worked in Ohio and Defendant's other Ohio assistant managers employed between January 9, 2016 and August 1, 2019.[11]

Under the agreement, Defendant Covelli Enterprises will pay $4,625,000 to a

---

[3] *Id.*
[4] Doc. 212.
[5] Doc. 213.
[6] Docs. 223, 225.
[7] Doc. 224.
[8] Doc. 228.
[9] Doc. 32-7 at 1.
[10] *Id.* ¶ 1.19.
[11] *Id.* ¶ 1.9. The class excludes those who opted out of the class action. *Id.*

Case No. 4:18-cv-0054
Gwin, J.

settlement fund.[12] $3,725,000 of this fund is allocated to the collective members and the remaining $900,000 is allocated to the class members.[13] Collective and class members get the funds remaining after deductions for the notice costs and settlement administrator fees, enhancement awards, and attorney fees, costs, and expenses.[14] No amount of unclaimed funds in the collective fund reverts to Covelli Enterprises, while unclaimed class funds will revert to Covelli Enterprises.[15] Finally, Covelli Enterprises agrees not to object to requested service awards or attorney's fees up to one third of the settlement fund.[16]

## Discussion

### A. Certifying the Settlement Class

For class certification, Plaintiffs must show that: (i) the class is too numerous to proceed through joinder, (ii) there are common questions of law or fact, (iii) the representative parties' claims or defenses are typical of the class, and (iv) the representative parties will adequately protect the class interests.[17] Also, because Plaintiffs seek Rule 23(b)(3) certification, they must show that common questions predominate over individualized questions and class adjudication is superior to other methods.[18]

First, with about 639 members, the class easily clears numerosity.[19]

Next, for common questions of law or fact predominate, the questions subject to generalized proof must outweigh those requiring individualized proof.[20] Here, the

---

[12] *Id.* ¶¶1.24, 3.1(A).
[13] *Id.* ¶3.5.
[14] *Id.*
[15] *Id.*
[16] *Id.* ¶3.2.
[17] Fed. R. Civ. P. 23(a).
[18] Fed. R. Civ. P. 23(b)(3).
[19] Doc. 226 at 11. *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1076 (6th Cir. 1996) ("[T]he Sixth Circuit has previously held that a class of 35 was sufficient to meet the numerosity requirement.").
[20] *Bridging Communities Inc. v. Top Flite Fin. Inc.*, 843 F.3d 1119, 1124 (6th Cir. 2016).

Case No. 4:18-cv-0054
Gwin, J.

Plaintiffs worked the same job, for the same employer, classified under the same overtime exemption. No doubt contributing to its success, Covelli Enterprises operates each franchise location under exacting and consistent operation rules. Further, the evidence uncovered in the FLSA collective action indicates that assistant managers received the same training and likely had similar job responsibilities.

Also, the representative parties bring the same claims, arising out of the same policy, as the whole class. Typicality is met.[21] Similarly, because the representatives' claims are typical of the class, and because there are no conflicts of interests, the named plaintiffs have adequately protected the class's interests.[22]

The Court also considers whether a class action is the superior method of adjudication. In making this finding, the Court considers whether the class promotes efficiency, minimize expense, and achieve decisional uniformity between similarly situated persons.[23]

Because Plaintiffs seek certification only for settlement purposes, there was no difficulty in managing the class.[24] Moreover, there are no alternative methods that could resolve these cases as efficiently, cheaply, or uniformly.

The Court certifies the class for settlement purposes.[25]

---

[21] *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 561 (6th Cir. 2007) ("A claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of the other class members, and if his or her claims are based on the same legal theory.").

[22] *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 n.5 (2011); *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997).

[23] *See Pipefitters Local 636 Ins. Fund v. Blue Cross Blue Shield of Mich.*, 654 F.3d 618, 630–31 (6th Cir. 2011).

[24] *Amchem Prods., Inc.*, 521 U.S at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial."(internal citation omitted)).

[25] *See* Fed. R. Civ. P. 23(e)(1), Advisory Committee Notes, 2018 Amendments ("The ultimate decision to certify the class for purposes of settlement cannot be made until the hearing on final approval of the proposed settlement."). The Court gives "undiluted, even heightened, attention to [Rule 23's] protections before certifying a settlement-only class— one formed just for the purpose of settlement, not for litigation." *UAW v. Gen. Motors Corp.*, 497 F.3d 615, 625 (6th Cir.

Case No. 4:18-cv-0054
Gwin, J.

B. Notice Program

For class certification and settlement purposes, the notice directed to class members must be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."[26]

The parties contracted with a consultant to send the settlement notice by first class mail to 144 individuals who are class and collective members, as well as 497 class members who are not collective members.[27] The consultant also sent settlement notices by email to 336 class members who are not collective members.[28] Only 18 of the mailed notices and 49 of the emailed notices were undeliverable.

Of the 497 class members, 230 submitted claims.[29]

The Court previously approved the parties' collective and class notices.[30] The Court finds that the notices satisfy constitutional and Rule 23 standards.

C. The Settlement Is Fair, Reasonable, and Adequate

Before approving a binding settlement, the Court must conclude that it is "fair, reasonable, and adequate."[31] Following a December 1, 2018 amendment, Rule 23(e)(2) now instructs courts to consider certain factors when deciding whether the settlement meets this standard:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:

---

2007) (explaining that "Rule 23 is designed to protect absentees by blocking unwarranted or overbroad class definitions" (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) (internal quotation marks omitted)).

[26] Fed. R. Civ. P. 23(c)(2)(B).
[27] Doc. 226-1 ¶¶16-19.
[28] *Id.* ¶¶16-17.
[29] *Id.* ¶23.
[30] Doc. 213.
[31] Fed. R. Civ. P. 23(e)(2).

Case No. 4:18-cv-0054
Gwin, J.

> (i) the costs, risks, and delay of trial and appeal;
> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class member claims;
> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
> (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

In addition to the Rule 23(e)(2) factors, courts may also consider circuit-specific factors in the analysis. In the Sixth Circuit, those factors are (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.[32]

The Court considers each of these factors, consolidating those that overlap.

### 1. Class Representatives' and Class Counsels' Adequate Representation

The Court finds that class representatives and class counsel gave good class representation. The Court finds no evidence of fraud or collusion.[33] To the contrary, negotiations were contentious and hard fought.[34] Class Counsel secured substantial benefits for the Settlement Class.

Further, the parties' counsel negotiated based upon adequate information, as the parties deposed numerous witnesses, responded to substantial document requests and interrogatories, and attended seven discovery conferences.[35] The parties engaged in two

---

[32] *UAW v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007).
[33] *Id.*
[34] *See* Doc. 212-2 at 8, 11.
[35] *Id.* at 3; *see also* Fed. R. Civ. P. 23(e)(2)(A)–(B), Advisory Committee Notes, 2018 Amendments (explaining that "the nature and amount of discovery in this or other cases, or the actual outcomes of other cases, may indicate whether counsel negotiating on behalf of the class had an adequate information base").

-6-

Case No. 4:18-cv-0054
Gwin, J.

mediation sessions with magistrate judges and ultimately settled the case after attending private mediation with a third party.[36] These were arm's length settlement negotiations.

The Court notes that there has not been a single objection to, or opt-out from, the Settlement. This lack of objection further signals that Settlement Class Representatives and Class Counsel have adequately represented absent class members during these settlement proceedings.

### 2. Adequate Relief when Considering Various Factors

To assess the fairness of a proposed settlement, the Court "weighs the plaintiff's likelihood of success on the merits against the amount and form of the relief offered in the settlement."[37] Here, the Settlement Agreement provides class members with monetary relief equal to approximately 33% of their potential overtime wages and collective members 83% of their potential overtime wages.[38] Collective members' unclaimed monies will not revert to Covelli, but class members' unclaimed monies will revert to Covelli.[39]

Considering the injuries alleged, the settlement gives substantial benefits to Settlement Class Members.

#### a. The Costs, Risks, and Delay of Trial and Appeal

The costs, risks, and delay of trial and appeal further support the adequacy of this settlement. Litigation for overtime wages for a class of this size would be complicated and fact-intensive. Plaintiffs would have faced risks on both liability and damages during trial and, potentially, on appeal.

---

[36] *See* Doc. 212-2 at 8, 11.
[37] *UAW v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007).
[38] Doc. 226 at 11.
[39] Doc. 212-7 ¶¶ 3.4, 3.5(B).

Case No. 4:18-cv-0054
Gwin, J.

The Settlement offers immediate compensation to Settlement Class Members, who would otherwise face protracted litigation. The settlement better promotes class interests than continued litigation.

### b. The Effectiveness of the Proposed Method for Distributing Relief

Based on the record, it appears that the claims procedure was the most effective method for distributing the settlement benefits. Covelli Enterprises identified all potential collective or class members.[40] And Plaintiffs, through a consultant, contacted those members individually.[41] Upon the settlement's approval, the claims administrator will calculate the final amount due to each of these members and send the settlement.[42]

The parties have proposed an efficient and effective method of distributing relief.

### c. The Terms of the Proposed Attorneys' Fee Award

The Settlement Agreement includes a "clear-sailing" provision, a promise by Covelli Enterprises not to object to a request for attorneys' fees up to one-third of the $4,625,000 aggregate amount, or reasonable costs and expenses. Accordingly, the Court gives closer scrutiny to the proposed attorneys' fee award.[43]

Absent evidence of improper incentives, a clear-sailing provision alone does not doom the settlement.[44] Upon close inspection, the Court finds no cause for concern. Class

---

[40] Doc. 226-1 ¶¶14, 17.
[41] *Id.* ¶¶16-19.
[42] Doc. 212-7 ¶3.1.
[43] *Gascho v. Glob. Fitness Holdings, LLC*, 822 F.3d 269, 290–91 (6th Cir. 2016) ("Neither clear sailing provisions nor kicker clauses have ever been held to be unlawful per se, but courts have recognized that their inclusion gives the district court "a heightened duty to peer into the provision and scrutinize closely the relationship between attorneys' fees and benefit to the class." (quoting *In re Bluetooth Headset Products Liability Litigation*, 654 F.3d 935, 948 (9th Cir. 2011))).
[44] *UAW v. Gen. Motors Corp.*, 497 F.3d 615, 627 (6th Cir. 2007) ("[C]ourts customarily demand evidence of improper incentives for the class representatives or class counsel—such as a promise of excessive attorney fees in return for a low-cost, expedited settlement—before abandoning the presumption that the class representatives and counsel handled their responsibilities with the independent vigor that the adversarial process demands.").

Case No. 4:18-cv-0054
Gwin, J.

Counsel seeks fees that are a percentage of the aggregate settlement amount, a common method of valuing attorney's fees in common fund settlements.[45] Further, this settlement was reached after protracted negotiations, motion practice, and trial preparation. This was not an expedited settlement with an eye towards making a quick buck.

### 3. The Settlement Agreement's Equitable Treatment of Class Members Relative to One Another

In assessing whether the Settlement Agreement treats Settlement Class Members fairly vis-a-vis one another, the Court considers whether the "apportionment of relief among class members takes appropriate account of differences among their claims."[46]

The Court finds that the settlement does. Each class and collective member will receive amounts proportional to the number of weeks he or she worked for Defendant.[47] This recovery amount roughly tracks with each member's potential damages.

### 4. The Public Interest

The settlement agreement is consistent with the public interest. Class actions provide plaintiffs relief when the costs and risks of litigation make bringing each individual claim not worthwhile. Settlements serve the public interest by providing class-wide wage recovery that otherwise may have been uncompensated.

Having considered the relevant factors, the Court finds that the settlement is fair, reasonable, and adequate.

### D. Plaintiffs' Request for Enhancement Awards for Settlement Collective and Class Representatives

Plaintiffs seek enhancement awards of $12,500 for Collective Representatives

---

[45] *In re Polyurethane Foam Antitrust Litig.*, 168 F. Supp. 3d 985, 1010 (N.D. Ohio 2016).
[46] Fed. R. Civ. P. 23(e)(2)(D), Advisory Committee Note 2018 Amendments.
[47] Doc. 212-7 ¶ 3.5.

-9-

Case No. 4:18-cv-0054
Gwin, J.

Chelsea Romano and Erin Kis, and $2,500 for Class Representatives Saidah Farrell and Mariah Hall.[48]

Enhancement (or service) awards encourage class members to become class representatives and reward their individual efforts on behalf of the class.[49]  However, courts carefully scrutinize service award requests for indicators that an award has led "named plaintiffs to expect a bounty for bringing suit or to compromise the interest of the class for personal gain."[50]

The Court finds that service awards for Collective Representatives are appropriate, though not in the amount requested.  While Collective Representatives have provided valuable contribution to the litigation, their requested awards are misaligned with the time each invested in the litigation.[51]  The Court instead awards each Romano and Kis $7,500, roughly $60 per hour spent on the litigation.

The Court also finds that the service awards for the Class Representatives appropriate, but not in the amount requested.  Both Farrell and Hall filed their class action lawsuit after learning about Romano and Kis's collective action lawsuit.[52]  Although Farrell and Hall have helped to secure substantial benefit to the class by bringing their lawsuit, the Court find that it is more appropriate to award each Farrell and Hall $1,000.

### E. Plaintiffs' Request for Attorney Fees

Plaintiffs move for attorney's fees, costs, and expenses.[53]  There are primarily two

---

[48] Doc. 224.
[49] *Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003).
[50] *Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003).
[51] Kis estimates that she spent over 125 hours pursuing this litigation and incurred $1,750 in costs and lost wages.  Doc. 226-2.  Romano estimates that she spent 100 hours pursuing this litigation.  Doc. 226-3.
[52] Docs. 226-4, 226-5.
[53] Fed. R. Civ. P. 23(h) (stating that, "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement" and giving three procedural requirements

Case No. 4:18-cv-0054
Gwin, J.

methods for calculating attorney's fees: the lodestar and the percentage-of-the-fund.[54]

The Court chooses the percentage-of-the-fund method. This method is typically preferred in common fund cases.[55] In common fund cases, the only requirement is that the award of attorneys' fees "be reasonable under the circumstances."[56]

In calculating a fee award as a percentage of the common fund, courts consider the ratio between attorney's fees and the benefit to the class.[57] Courts have discretion to define the "total class benefit" based on the unique circumstances of each case.[58]

In this case, Plaintiffs claim the $4,625,000 as the total class and collective benefit—the aggregate settlement amount that funds the class and collective member payments, service awards, attorney fees and costs, and settlement administration and notice costs.

Plaintiffs' proposed amount fails to account for the money that will likely revert back to Defendant.

The Settlement allocates $900,000 to settle the Ohio state law class action for class members.[59] Only 233 of the 497 class members submitted claims, though, so approximately 47% of the $900,000 will be available for class members;[60] the unclaimed funds will revert to Defendant.[61] Thus the actual benefit to the class is $421,931.69.[62]

---

to follow).
[54] *Van Horn v. Nationwide Prop. & Cas. Ins. Co.*, 436 F. App'x 496, 497–501 (6th Cir. 2011).
[55] *In re Polyurethane Foam Antitrust Litig.*, 168 F. Supp. 3d 985, 1010 (N.D. Ohio 2016).
[56] *Van Horn v. Nationwide Prop. & Cas. Ins. Co.*, 436 F. App'x 496, 497–501 (6th Cir. 2011) (quoting *Rawlings v. Prudential–Bache Props., Inc.,* 9 F.3d 513, 516 (6th Cir.1993)).
[57] *Gascho v. Glob. Fitness Holdings, LLC,* 822 F.3d 269, 282 (6th Cir. 2016).
[58] *Gascho v. Glob. Fitness Holdings, LLC,* 822 F.3d 269, 286 (6th Cir. 2016).
[59] Doc. 32-7 ¶3.1(A).
[60] Doc. 226 at 11. The Settlement apportions funds among class members according to the number of weeks each member worked for Defendant. Doc. 32-7 ¶3.5(A). The parties have not identified how many weeks the 233 class members with claims worked, nor how many weeks the 497 class members worked. Absent this information, the Court estimates the actual class benefit based on the number of class claims submitted instead of weeks worked.
[61] Doc. 32-7 ¶3.5(B).
[62] $900,000 x (233/497) = $421,931.69.

Case No. 4:18-cv-0054
Gwin, J.

Combined with the collective's $3,725,000 benefit,[63] the actual class and collective benefit is $4,146,931.59.

Federal courts have debated whether attorneys' fees should be based on a class's total benefit or actual benefit. As the United States Supreme Court has recognized, class members' "right to share the harvest of the lawsuit upon proof of their identity, whether or not they exercise it, is a benefit in the fund created by the efforts of the class representatives and their counsel."[64] Thus the available benefit should be a factor in determining the attorney's fees.

But as Justice O'Connor explained, relying solely on the available benefit "decouple[s] class counsel's financial incentives from those of the class, increasing the risk that the actual distribution will be misallocated between attorney's fees and the plaintiffs' recovery."[65]

Some courts have re-coupled class counsel's financial incentives to those of the class by valuing the benefit fund as the mid-point between the available benefit and the actual benefit.[66] Such valuation is appropriate in this case.

Class counsel seeks one-third of the $900,000 potential class benefit, or $300,000. After service awards and administrative costs are deducted, class members would have less than $600,000 available. And with only 47% submitting claims, the actual class benefit

---

[63] Doc. 32-7 ¶3.4.
[64] *Boeing Co. v. Van Gemert*, 444 U.S. 472, 480 (1980); *see also Gascho v. Glob. Fitness Holdings, LLC,* 822 F.3d 269, 282 (6th Cir. 2016) (approving district court's reliance on *Boeing Co.*).
[65] *Int'l Precious Metals Corp. v. Waters*, 530 U.S. 1223, 1223 (2000).
[66] *See Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766, 798-802 (N.D. Ohio 2010), *on reconsideration in part* (July 21, 2010) (describing the Circuit split on benefit fund calculations and applying the mid-point valuation). *Cf. Gascho v. Glob. Fitness Holdings, LLC*, 822 F.3d 269, 288 (6th Cir. 2016) (declining to "endorse a rule adopting a 'midpoint' calculation" but nonetheless affirming the district court's use of such calculation).

-12-

Case No. 4:18-cv-0054
Gwin, J.

would be less than $282,000.[67] So, to settle the class's Ohio law claims, the class counsel would receive more than the class.

The Court finds that the appropriate total benefit valuation is the midpoint between the available benefit and actual benefit, or $4,385,965.80.[68] Class Counsels' request for one-third of this benefit is, nonetheless, high. In this Sixth Circuit, 20 to 30 percent of the common fund appears to be the typical range.[69] Although providing very good representation, the Court finds that a 30% award appropriate.

The Court assesses this result's reasonableness by cross-checking it with the lodestar method. The lodestar figure is the number of hours reasonably expended on litigation multiplied by a reasonable hourly rate.[70] Class Counsel indicate they have spent 5,821.40 hours on this case.[71] Counsel also indicate that their hourly rates ranged from $350-$895.[72] According to the Ohio State Bar Association, the average hourly rate for local counsel is $250 per hour.[73] Applying this local rate yields a lodestar amount of $1,455,350.[74] As this amount is comparable to a 30% award of the total benefit, or $1,315,789.74,[75] the Court finds that the percentage of the common fund award is

---

[67] $600,000 x 0.47 = $282,000.
[68] (Available Benefit + Actual Benefit)/2 = ($4,625,000 + $4,146,931.59)/2 = $4,385,965.80.
[69] *See, e.g.*, In re Cardizem CD Antitrust Litig., 218 F.R.D. 508, 532 (E.D. Mich. 2003) (listing cases); *F & M Distribs. Inc. Sec. Litig.*, 95-CV-71778-DT, 1999 U.S. Dist. LEXIS 11090, at *8-10 (E.D. Mich. June 29, 1999) (awarding a 30% fee award after observing that "when using a percentage-of-the-fund approach to calculate attorneys' fees, twenty-five percent has traditionally been the benchmark standard, with the ordinary range for attorney's fees between 20-30%") (internal quotation marks and citation omitted)).
[70] *See* Reed v. Rhodes, 179 F.3d 453, 471 (6th Cir. 1999).
[71] Doc. 225-1 at 8.
[72] Docs. 226-6, 226-7, 226-8, 226-9.
[73] Ohio State Bar Association, The Economics of Law Practice in Ohio in 2019, *available at* https://www.ohiobar.org/membership/Practice-Management-Tools-Services/economics-of-law-practice-study/. *Ohio Right to Life Soc., Inc. v. Ohio Elections Com'n*, 590 F. App'x 597, 602 (6th Cir. 2014) (affirming use of $250 hourly market rate in lodestar calculation).
[74] 5,821.40 hours x $250/hour = $1,455,350.
[75] $4,385,965.80 x 0.30 = $1,315,789.74.

-13-

Case No. 4:18-cv-0054
Gwin, J.

reasonable.

### F. Plaintiffs' Request for Reasonable Costs and Expenses

Plaintiffs' request $100,595.57 in costs and expenses. "Recoverable out-of-pocket expenses are those incurred by the attorney which are normally charged to a fee-paying client, in the course of providing legal services, such as reasonable photocopying, paralegal expenses, and travel and telephone costs."[76]

The amounts that Plaintiffs request generally appear to be reasonable.

The Court, however, will not award the $14,227.02 in computerized research expenses (categorized as "Pacer," "Legal Research," "Electronic Research" and "Computerized Research"). "Sixth Circuit law is unsettled regarding whether costs for electronic legal research are properly awarded or whether these costs should be considered part of the overhead included in the attorney's hourly fee."[77] The Court may award such costs "[i]f distinct charges are incurred for specific research directly relating to the case, and the general practice in the local legal community is to pass those charges on to the client."[78] Class Counsel does not contend that passing on computerized legal research charges to the client is standard practice in the local legal community. The Court will not award reimbursement of this cost.

Class Counsel also requests $2,096.40 in court filing fees. $1,440 of these fees were for motions to appear pro hac vice.[79] "[P]ro hac vice fees are generally not

---

[76] *Waldo v. Consumers Energy Co.*, 726 F.3d 802, 827 (6th Cir. 2013) (citing *Northcross v. Bd. Of Educ. Of Memphis City Sch.*, 611 F.2d 624, 639 (6th Cir. 1979)).
[77] *Smith v. Serv. Master Corp.*, 592 F. App'x 363, 367 (6th Cir. 2014).
[78] *Id.* at 368.
[79] Docs. 8, 12, 13, 45, 46, 147, 153, 154, 178; Case No. 4:18-cv-434 Docs. 13, 14, 19.

-14-

Case No. 4:18-cv-0054
Gwin, J.

recoverable, and their award disfavored."[80] The Court will award only $800 for the complaint filing fees.[81]

Class Counsel also requests $10,238.68 in "Administration Fees (Rust)" and $20,477.36 in "Administration Costs."[82] But Class Counsel also requests $30,000 for Claims Administrator Rust Consulting's fee.[83] These expenses appear to be for the same purpose: securing Rust Consulting to act as the Claims Administrator. The Court will award the $30,000 fee for Rust Consulting but will not award the $10,238.68 and $20,477.36 costs.

The Court therefore awards $53,509.15 in costs and expenses. The Court also awards the $30,000 Claims Administrator fee.

## CONCLUSION

Accordingly, the Court **CERTIFIES** the settlement class and **APPROVES** the settlement agreement. The Court **GRANTS** enhancement awards of $7,500 to each Romano and Kis and enhancement awards of $1,000 to each Farrell and Hall. The Court **GRANTS** attorney's fees, costs, and expenses as stated in this order. And the Court **GRANTS** the $30,000 claims administrator fee.

---

[80] *Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766, 816 (N.D. Ohio 2010), *on reconsideration in part* (July 21, 2010).

[81] Doc. 1; Case No. 4:18-cv-434 Doc. 1. Class Counsel at Outten & Golden LLP claimed that their court filing fee expenses totaled $976.40. Doc. 226 at 16. But the only fees they paid on the docket are pro hac vice fees for 6 of their attorneys totaling $720. Class Counsel does not explain what the extra $256.40 in filing fees represent. The Court will not award these unaccounted filing fees.
   Additionally, Class Counsel at Merriman Legando Williams & Klang, LLC claim they have had $864.96 in litigation expenses for "filing of the complaint, several pro hac vice motions, and hosting the final mediation session." Doc. 226-7. Class Counsel does not, however, indicate how much they spent on each cost. The $800 award noted above includes Class Counsel's $400 expense for filing the complaint, but without any evidence that the remaining $464.96 was a reasonable expense, the Court will not award the $464.96.

[82] Docs. 226-6, 226-8.

[83] Doc. 225-1 at 15.

-15-

Case No. 4:18-cv-0054
Gwin, J.

    IT IS SO ORDERED.

Dated: May 29, 2020          *s/     James S. Gwin*
                                                      JAMES S. GWIN
                                                      UNITED STATES DISTRICT JUDGE